

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00343-CR

CAMERON BYRAM                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY
TRIAL COURT NO. 1332976

----------

## OPINION

----------

### I. INTRODUCTION

In one issue, appellant Cameron Byram appeals the trial court's denial of his motion to suppress, which was followed by Byram pleading guilty to driving while intoxicated with an open container. We will reverse and remand.

## II. Background

Fort Worth Police Officer Figueroa[1] said that on July 4, 2013, he was in downtown Fort Worth "conducting preventative patrol" when he found himself stopped at a light in his patrol vehicle alongside Byram's vehicle. Figueroa said that his own window was down and that the passenger's window on Byram's vehicle was rolled all the way down. Figueroa testified that the female passenger in Byram's vehicle drew his attention because she "was sitting in the passenger seat . . . hunched over." Figueroa averred that he "didn't see any movement at all [from] the female." Given the female passenger's posture, Figueroa averred that he believed the passenger to be unconscious and "possibly [in need of] some medical attention." According to Figueroa, he suspected she might be suffering from "alcohol poisoning."

Figueroa also testified that he could smell the "odor of an alcoholic beverage coming from that vehicle." Figueroa said that he was "maybe less than ten feet" away from Byram's vehicle at the time. According to Figueroa, Byram was looking forward and not attending the female passenger. Figueroa said that he "yelled over to [Byram] to ask him if [the female passenger] was okay" but that Byram "ignored" Figueroa despite Figueroa's belief that Byram could hear him.

Figueroa testified that when the light turned green, Byram drove off. Figueroa interpreted Byram's actions as an attempt to "avoid contact with the

---

[1]We note that Figueroa's first name is not in the record.

police." Figueroa said that Byram's actions further raised his concerns for the passenger. Thus, Figueroa conducted a traffic stop. Figueroa said that upon stopping Byram, he immediately checked on the passenger; that she was "barely conscious"; and that it appeared to him that she "had some sort of medical problem." At that time, Figueroa said that he determined the passenger had "vomited . . . all over the passenger side of that vehicle." Figueroa called for medical attention, but when they arrived, the female passenger refused their assistance.

Figueroa testified that Byram had not committed a traffic offense; that there were not technical violations present on Byram's vehicle prior to him conducting the stop; and that the only reason he stopped Byram's vehicle was to perform a safety check on the passenger. Upon stopping Byram's vehicle, Figueroa said that he began to simultaneously conduct a safety check on the passenger and investigate Byram for driving while intoxicated (DWI). At the suppression hearing, the State stipulated that the stop of Byram's vehicle was not conducted pursuant to a warrant and that Byram's car was in the vicinity of several hospitals within a five-mile radius. The trial court denied Byram's motion to suppress. Byram then entered a plea of guilty, and the trial court assessed punishment at ninety days in jail and a $750 fine. The trial court then suspended Byram's sentence and placed him on community supervision for eighteen months. This appeal followed.

### III. Discussion

In one issue, Byram argues that the trial court erred by denying his motion to suppress. Specifically, Byram argues that the community caretaking exception to the Fourth Amendment does not apply to the facts of this case. The State argues that the community caretaking exception applies in this case or, in the alternative, that Figueroa possessed reasonable suspicion to stop Byram.

#### A.    Standard of Review and Fourth Amendment Law

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex.

4

Crim. App.), *cert. denied*, 558 U.S. 1093 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

Under the Fourth Amendment, a warrantless arrest is unreasonable per se unless it fits into one of a "few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135 (1993); *Torres*, 182 S.W.3d at 901.

## B.     Community Caretaking Exception

The Court of Criminal Appeals has determined that a search or seizure is not "unreasonable" when it is done pursuant to a valid exercise of the community caretaking function. *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999) (citing *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S. Ct. 2523, 2528 (1973)). This exception is one of "narrow applicability." *Wright*, 7 S.W.3d at 152. Indeed, as the Court stated, "Only in the most unusual circumstances" will the community caretaking exception be applicable. *Id.* In *Wright*, the Court provided a list of four nonexclusive factors to be considered when deciding whether a search or seizure is justified by this narrow exception:

(1)     the nature and level of the distress exhibited by the individual;

5

(2)     the location of the individual;

(3)     whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and

(4)     to what extent the individual—if not assisted—presented a danger to himself or others.

*Id.* Even giving almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, our application of these factors to Byram's case leads us to conclude that the community caretaking exception does not apply.

As to the first factor, the single fact "exhibited" by Byram's passenger was that she appeared to be passed out.  It was not until after Figueroa effectuated his stop that he learned that the passenger had vomited, and even that fact would not have been sufficient to apply the narrow exception of community caretaking.  *See Andrews v. State*, 79 S.W.3d 649, 653 (Tex. App.—Waco 2002, pet. ref'd) (holding stop not reasonable when officer observed driver stop on shoulder, passenger open door and appear to vomit, and car drive off); *see also Wright v. State*, 18 S.W.3d 245, 247 (Tex. App.—Austin 2000, pet. ref'd) (holding stop not reasonable when officer observed passenger hang head out of window and appear to vomit).  Here, even though this factor is afforded the greatest weight of the factors to consider, its strength is fairly low in favor of the community caretaking exception.  *See Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002) ("Because the purpose of the community caretaking exception

6

is to allow an officer to 'seize' and assist an individual whom he reasonably believes is in need of help, the first factor is entitled to the greatest weight.").

As to the second factor, although there is evidence that Byram was in an area where individuals might be drinking alcohol, there is nothing in the record to demonstrate that the type of facts normally associated with this factor are present in this case. *See Morfin v. State*, 34 S.W.3d 664, 666 (Tex. App.—San Antonio 2000, no pet.) (considering it significant to community caretaking exception that vehicle approached by police was parked in "very high crime area"); *see also Chilman v. State*, 22 S.W.3d 50, 55 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (considering it significant that car was parked in "a spot where people normally do not park"). In this case, the vehicle was in a location where there were numerous people and vehicles, and as was stipulated by the State at the suppression hearing, it was stopped at a stoplight in an area near several hospitals within a five-mile radius. *See Corbin*, 85 S.W.3d at 278 ("Since there is nothing in the record indicating that this area is isolated with little traffic and no business or houses nearby, it cannot support the [community caretaking] ruling."). This factor weighs against application of the community caretaking exception.

As to the third factor, Byram's passenger was not alone. There is nothing in the record to indicate that the passenger did not have access to assistance independent of Figueroa. *See id.* (reasoning that third factor applied when individual was alone and without assistance other than from arresting officer).

7

This factor as well weighs against application of the community caretaking exception.

As to the fourth factor, there is no evidence that supports that Byram's passenger presented a danger to herself or others. Much like in our analysis of the first factor, the only facts relied upon by Figueroa were that the passenger appeared "hunched over" in the passenger seat of Byram's vehicle and that he smelled the odor of an alcoholic beverage emitting from the vehicle. We simply cannot conclude that the "narrow applicability" of the community caretaking exception, when applied to a "hunched over" passenger who was in a vehicle that smelled of an alcoholic beverage, indicates that the passenger presented a danger to herself or others. This factor weighs against application of the community caretaking exception.

We conclude that along the "community caretaking distress spectrum," this case strongly tends to involve no apparent distress. *See Wiseman v. State*, No. 02-06-00021-CR, 2006 WL 3334171, at *7 (Tex. App.—Fort Worth Nov. 16, 2006, pet ref'd) (mem. op., not designated for publication). Indeed, the passenger who Figueroa said he felt needed assistance did not appear to be in any great distress, she was located in a busy area of town where there were nearby hospitals, she was not alone, and she did not appear to be a danger to herself or others. *See Id.* ("In the community caretaking distress spectrum, the most severe distress tends to involve solo drivers in some sort of trouble.").

8

## C. No Reasonable Suspicion to Detain Byram

The State argues that the trial court had an independent reason to deny Byram's motion to suppress. Specifically, the State argues that Figueroa had "reasonable suspicion to stop" Byram because he was in an area and at a time "known for excessive partying"; that the odor of alcohol was "wafting" from Byram's vehicle; that the female passenger was "hunched over"; and that Byram's decision to ignore Figueroa was "abnormal." The State argues that the totality of these circumstances gave rise to Figueroa having a reasonable suspicion to stop Byram. The State does not directly identify what "crime" Figueroa had suspicion of.

In support of its position, the State cites to two cases where the odor of alcohol coupled with other behavior was found sufficient reasonable suspicion to investigate alcohol-based offenses. *Harper v. State*, 349 S.W.3d 188, 192 (Tex. App.—Amarillo 2011, pet. ref'd) (possession of marihuana and open container); *Newman v. State*, No. 01-00-00106-CR, 2001 WL 279182, at *1 (Tex. App.— Houston [1st Dist.] Mar. 22, 2001, no pet.) (op., not designated for publication) (possession of marihuana). But the State's reliance on these cases is misplaced. Both *Harper* and *Newman* involved a continued detention after a vehicle had been lawfully stopped for a traffic violation and where the detaining officers developed reasonable suspicion upon encountering the suspects face-to-face. *Harper*, 349 S.W.3d at 192 (holding officer who stopped vehicle for a non-working taillight had probable cause to conduct warrantless search where officer

9

smelled odor of alcohol and passenger admitted that there was an open container of alcohol and marihuana in the vehicle); *Newman*, 2001 WL 279182, at *1 (holding that continued detention was justified where two officers smelled strong odor of alcohol on defendant and defendant gave suspicious answers to questions and he appeared to not want officers to search his vehicle).

Here, Figueroa smelled the "odor of an alcoholic beverage" from the vantage of his vehicle in an area where admittedly there were numerous people in Figueroa's direct vicinity—a vicinity that Figueroa described as being a "4th of July weekend celebration" where there was "a lot of partying" occurring. Further, we are loathe to find that Byram's exercise of his constitutional right to ignore a police officer is "abnormal." *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995) ("While a law enforcement officer is free to approach a citizen and ask questions, the citizen is also free to not answer the questions."). And we have already addressed that Byram's passenger having been "hunched over" was insufficient to support Figueroa's stop of Byram's vehicle.

We do not question the good faith of Figueroa's subjective suspicion that Byram might have been involved in an alcohol-based offense. Nevertheless, so long as consumption of alcohol is not illegal in and of itself, a standard permitting or requiring detention and investigation of persons for alcohol-based offenses solely on whether the odor of alcohol is present invites unwarranted police intrusions into the affairs and freedom of persons. *See Terry*, 392 U.S. at 21–22, 88 S. Ct. at 1880. Because of the absence of articulable facts which could

10

reasonably raise a suspicion that Byram was engaged in an alcohol-based offense, Figueroa's stopping him violated Byram's Fourth Amendment rights. *See Domingo v. State*, 82 S.W.3d 617, 622 (Tex. App.—Amarillo 2002, no pet.) (holding no reasonable suspicion existed to support detention when defendant's conversation with officer occurred at 9:00 p.m. in high-crime area, defendant was part of a group that was lawfully socializing and drinking alcohol without engaging in disruptive or illegal activities, and the officer was not responding to or investigating reports of criminal activity); *see also Clement v. State*, 461 S.W.3d 274, 282 (Tex. App.—Eastland 2015, pet. granted) (holding that State failed to establish that police officer had probable cause to arrest defendant for driving while intoxicated where officer had not specifically testified about any physical observations he made of defendant's eyes, speech, or movement, and officer relied upon the fact that he smelled alcohol on defendant to conduct the arrest). We hold that the trial court abused its discretion by denying Byram's motion to suppress.

### E. Harm

We further hold that because Byram was seized in violation of his constitutional rights and he pleaded guilty only after the trial court's denial of his motion to suppress, the trial court's incorrect finding caused Byram harm. *See* Tex. Rule App. P. 44.2(a); *see also Holmes v. State*, 323 S.W.3d 163, 172–74 (Tex. Crim. App. 2009) (holding that trial court's denial of appellant's motion to

11

suppress is deeply connected to decision to plead guilty).  We sustain Byram's sole issue.

## IV. CONCLUSION

Having sustained Byram's sole issue, we reverse the trial court's judgment and remand this case to the trial court for a new trial or further proceedings consistent with this opinion.  *See* Tex. R. App. P. 43.2(d).


/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

WALKER, J., filed a dissenting opinion.

PUBLISH

DELIVERED:  October 15, 2015