PD-1480-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/13/2015 4:34:14 PM
Accepted 11/16/2015 3:08:38 PM
ABEL ACOSTA
CLERK

# IN THE COURT OF CRIMINAL APPEALS
## OF TEXAS

| | | |
|---|---|---|
| **CAMERON BYRAM,** | § | |
| *APPELLANT* | § | |
| | § | |
| **V.** | § | **NO. PD-____-15** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| *APPELLEE* | § | |

*STATE'S PETITION FOR DISCRETIONARY REVIEW OF THE DECISION OF THE COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS IN CAUSE NUMBER 02-14-00343-CR REVERSING THE CONVICTION IN CAUSE NUMBER 1332976 IN THE COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY, TEXAS; THE HONORABLE SHERRY HILL, JUDGE PRESIDING.*

§ § §
## STATE'S PETITION FOR DISCRETIONARY REVIEW
§ § §

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR
Chief, Post-Conviction

STEVEN W. CONDER, Assistant
Criminal District Attorney
State Bar No. 04656510
401 W. Belknap
Fort Worth, Texas    76196-0201
(817) 884-1687
FAX (817) 884-1672
CCAAppellateAlerts@Tarrantcountytx.gov

FILED IN
COURT OF CRIMINAL APPEALS

November 16, 2015

ABEL ACOSTA, CLERK

## IDENTITY OF JUDGES, PARTIES AND COUNSELS

Trial Court Judge:
    Hon. Sherry Hill, former Judge, County Criminal Court No. 1 of Tarrant County, Texas

Parties to the Judgment:
    Appellant, Cameron Byram, and the State of Texas

Appellant's counsels at trial:
    Hon. Mitchell Slate Miers
    700 NE Loop 820, Suite 216
    Hurst, Texas 76053

    Hon. Mimi Coffey
    4700 Airport Freeway
    Fort Worth, Texas 76117

    Hon. Richard A. Henderson
    100 Throckmorton Street, Suite 540
    Fort Worth, Texas 76102

Counsels for the State at trial:
    Hon. Joe Shannon Jr., former Criminal District Attorney, Tarrant County, Texas
    Hon. Jacob R. Lilly, former Assistant Criminal District Attorney, Tarrant County, Texas
    Hon. Patrick Almand, former Assistant Criminal District Attorney, Tarrant County, Texas
    Hon. Nathan Martin, Assistant Criminal District Attorney, Tarrant County, Texas, 401 W. Belknap Street, Fort Worth, Texas 76196-0201

Appellant's counsel on direct appeal:
    Hon. Richard A. Henderson
    100 Throckmorton Street, Suite 540
    Fort Worth, Texas 76102

Counsel for the State on direct appeal:
  Hon. Sharen Wilson, Criminal District Attorney, Tarrant County, Texas
  Hon. Steven W. Conder, Assistant Criminal District Attorney, Tarrant County, Texas
  401 W. Belknap Street, Fort Worth, Texas 76196-0201

# TABLE OF CONTENTS

IDENTITY OF JUDGES, PARTIES AND COUNSELS........................................................i

TABLE OF CONTENTS........................................................................................iii

TABLE OF AUTHORITIES .................................................................................. iv

STATEMENT REGARDING ORAL ARGUMENT ................................................. 1

STATEMENT OF THE CASE................................................................................ 1

STATEMENT OF PROCEDURAL HISTORY........................................................ 2

QUESTIONS FOR REVIEW ................................................................................. 3

ARGUMENT ........................................................................................................ 3

    A.    Deference to Trial Court's Implied Factual Findings on
        Community Caretaking................................................................................ 3

    B.    Determination Whether Stop Qualified Under Community
        Caretaking Exception................................................................................ 7

    C,    Determination Whether Officer Had Reasonable Suspicion ................... 8

CONCLUSION .....................................................................................................10

PRAYER...............................................................................................................10

CERTIFICATE OF SERVICE...............................................................................11

CERTIFICATE OF COMPLIANCE .....................................................................11

APPENDIX (Court of Appeals Opinion) ................................................................ A

APPENDIX (Dissenting Opinion)........................................................................... B

# INDEX OF AUTHORITIES

CASES                                                                 PAGES

*Andrews v. State*,
    79 S.W.3d 649 (Tex. App. – Waco 2002, pet. refused) ........................................ 7

*Byram v. State*,
    ___ S.W.3d ___, 2015 WL 6134114 (Tex. App. - Fort Worth
    October 15, 2015) ........................................................................................... passim

*Davis v. State*,
    947 S.W.2d 240 (Tex. Crim. App. 1997) ................................................................. 8

*Flores v. State*,
    2014 WL 7340279 (Tex. App. - San Antonio
    December 23, 2014, no pet.) ................................................................................... 7

*Gutierrez v. State*,
    221 S.W.3d 680 (Tex. Crim. App. 2007) ................................................................. 4

*Guzman v. State*,
    955 S.W.2d 85 (Tex. Crim. App. 1997) ............................................................... 3, 4

*Harper v. State*,
    349 S.W.3d 188 (Tex. App. – Amarillo 2011, pet. refused) ................................. 9

*Loserth v. State*,
    963 S.W.2d 770 (Tex. Crim. App. 1998) ................................................................. 4

*Martinez v. State*,
    348 S.W.3d 919 (Tex. Crim. App. 2011) ................................................................. 4

*Newman v. State*,
    2001 WL 279182 (Tex. App. – Houston [1st Dist.]
    March 22, 2001, no pet.) ......................................................................................... 9

*State v. Ross*,
    32 S.W.3d 853 (Tex. Crim. App. 2000)...........................................................................3

*Wright v. State*,
    18 S.W.3d 245 (Tex. App. – Austin 2000, pet. refused) ........................................7

<u>RULES</u>

Tex. R. App. P. 9.4(e) .................................................................................................. 11

Tex. R. App. P. 9.4(i) .............................................................................................. 11, 12

IN THE COURT OF CRIMINAL APPEALS
OF TEXAS

CAMERON BYRAM,          §
   *APPELLANT*           §
                      §
V.                         §      NO.   PD-___-15
                      §
THE STATE OF TEXAS,       §
   *APPELLEE*            §

## STATE'S PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

## STATEMENT REGARDING ORAL ARGUMENT

The State requests that oral argument be granted because this case involves important questions of State law to be decided.

## STATEMENT OF THE CASE

This case addresses the circumstances under which a police officer may exercise his community caretaking duties within the constraints of the Fourth Amendment to the United States Constitution.

1

# STATEMENT OF PROCEDURAL HISTORY

The appellant was charged with driving while intoxicated while possessing an open container within his immediate possession. (C.R. I:6). The appellant filed a pre-trial motion to suppress all evidence connected with his detention and his arrest alleging the police detained him without a warrant, probable cause, or reasonable suspicion. (C.R. I:13-15). Following a hearing, the trial court denied the appellant's suppression motion. (R.R. I:24). The appellant subsequently pled guilty and was sentenced to ninety days' confinement probated for eighteen months. (C.R. I:19).

On October 15, 2015, in a 2-1 decision, the Court of Appeals held that the trial court abused its discretion in denying the appellant's motion to suppress because:

- The car passenger was not in sufficient distress to justify the police officer's stop under the community caretaking exception to the Fourth Amendment's warrant requirement; and

- The police officer lacked reasonable suspicion that the appellant was engaged in an alcohol-based offense.

See *Byram v. State*, ___ S.W.3d ___, 2015 WL 6134114 (Tex. App. - Fort Worth October 15, 2015).

1. Whether the Court of Appeals gave proper deference to the trial court's determination of factual issues and application-of-law-to-fact issues that turn on credibility or demeanor?

2. Whether the Court of Appeals properly determined that the police officer's stop did not qualify under the community caretaking exception to the Fourth Amendment's warrant requirement?

3. Whether the Court of Appeals properly determined that the police officer lacked reasonable suspicion to stop the appellant's vehicle?

ARGUMENT

**A.    Deference to Trial Court's Implied Factual Findings on Community Caretaking**

The Court of Appeals failed to give proper deference to the trial court's implied factual findings supporting its determination that this stop qualified under the community caretaking exception to the warrant requirement.

In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).    The reviewing court must afford almost total deference to the trial court's application of law to fact questions which turn upon an evaluation of the credibility and demeanor of the

witnesses. *Martinez v. State*, 348 S.W.3d 919, 921-22 (Tex. Crim. App. 2011); *Loserth v. State*, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998); *Guzman v. State*, 955 S.W.2d at 89. The reviewing court must view the evidence and all its reasonable inferences in the light most favorable to the trial court's ruling. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). When the trial court does not make explicit findings of fact, the reviewing court should infer the necessary factual findings that support the court's ruling when the evidence supports the implied findings. *Gutierrez v. State*, 221 S.W.3d at 687.

In denying the appellant's suppression motion, the trial court made two implicit findings:

- Officer Figueroa was primarily motivated by a community caretaking purpose; and

- Officer Figueroa's belief that the female passenger required assistance was reasonable.

See *Byram v. State*, 2015 WL 6134114, at *6 (Walker J., dissent).

Officer Figueroa testified that he initiated a traffic stop because he was concerned about the female passenger's safety because she was hunched over, not moving and seemingly unconscious, and the appellant was ignoring his inquiry whether his passenger needed assistance. (R.R. I:8-12, 14). The

4

majority opinion does not dispute that Officer Figueroa was primarily motivated by community caretaking purposes.   See ***Byram v. State***, 2015 WL 6134114, at \*2-3.

As aptly described by Justice Walker in her dissenting opinion, the record supports the trial court's implied finding that Officer's Figueroa's belief was reasonable:

> Viewed in the light most favorable to the trial court's ruling, the evidence presented at the suppression hearing established that at approximately 5:30 p.m. on the Fourth of July holiday, the female front-seat passenger was hunched over and not moving in a vehicle that smelled of alcohol and was being driven in the "bar district" of downtown Fort Worth by a man who was unconcerned about her condition and refused to respond to Officer Figueroa's inquiry about the woman's status. Looking to the four nonexclusive factors to assess the reasonableness of Officer Figueroa's belief that the female passenger needed assistance, the nature and level of the female's distress was significant—she was not moving and appeared unconscious. The female's location—in a vehicle driven by a man who appeared unconcerned about her well-being—was precarious. Her access to assistance was doubtful for this same reason—the man driving the SUV exhibited no concern about his passenger in response to Officer Figueroa's query about her condition.   And the female was a danger to herself; she appeared comatose and incapable of asking for help. Thus, all four factors—the female's level of distress, her location, her lack of access to assistance, and the danger to herself—support the reasonableness of Officer Figueroa's belief that she needed assistance.

***Byram v. State***, 2015 WL 6134114, at \*6 (footnotes omitted).

By contrast, rather than give the trial court any deference or view its

5

findings in their most favorable light, the majority opinion instead discounts its implied finding that Officer Figueroa's belief was reasonable by reducing it to the facts:

> [T]hat the passenger appeared "hunched over" in the passenger seat of Byram's vehicle and that he smelled the odor of an alcoholic beverage emitting from the vehicle

*Byram v. State*, 2015 WL 6134114, at *3.    The majority's assessment of each community caretaking factor further shows their lack of deference:

- In assessing the first factor, the majority dismisses the fact that the passenger was seemingly unconscious and suffering from possible alcohol poisoning merely because Officer Figueroa did not discover her nauseous state until after he effectuated the traffic stop.    See *Byram v. State*, 2015 WL 6134114, at *3.

- In assessing the second and third factor, the majority focuses on the fact that the passenger was not alone and was downtown with nearby hospitals; however, as pointed out by the dissent, they do not even consider that the appellant's actions did not show concern for his passenger or that he was seeking medical assistance.    See *Byram v. State*, 2015 WL 6134114, at *3, 6.

- In assessing the fourth factor, the majority dismisses the possible danger to the passenger since she engaged in no overt dangerous act other than being "hunched over" in an alcohol-reeked vehicle. See *Byram v. State*, 2015 WL 6134114, at *3.

Whereas a deferential factual review, as the dissent indicates, actually supports the trial court's implied finding that Officer Figueroa's stop was reasonable.    See *Byram v. State*, 2015 WL 6134114, at *6-7.

**B. Determination Whether Stop Qualified Under Community Caretaking Exception**

The Court of Appeals improperly determined that this stop did not qualify under the community caretaking exception to the warrant requirement.

In holding that Officer Figueroa's belief was unreasonable, the majority places undue focus on the "vomit" cases[1] and the fact that the female passenger was not alone in an isolated place.   See **Byram v. State**, 2015 WL 6134114, at *3.   First, this case involves much more than a passenger is vomiting out the window most likely suffering from an upset stomach; the passenger herein was seemingly unconscious and possibly suffering from alcohol poisoning given her location inside an alcohol-effused vehicle traveling in a bar district on a holiday known for excessive partying.   (R.R. II:6-9).   Additionally, the police's community caretaking function is not limited to isolated places or to people who are alone.   See **Flores v. State**, 2014 WL 7340279, at *3 (Tex. App. - San Antonio December 23, 2014, no pet.).

In sum, when the evidence and its reasonable inferences are viewed in

---

[1]   See **Andrews v. State**, 79 S.W.3d 649, 651-52 (Tex. App. – Waco 2002, pet. refused); **Wright v. State**, 18 S.W.3d 245, 246 (Tex. App. – Austin 2000, pet. refused).

the light most favorable to the trial court's ruling, all four factors - the female passenger's level of distress and seeming unconsciousness, her location in a vehicle driven by an unconcerned driver, her lack of access to assistance, and the danger to herself - support the reasonableness of Officer Figueroa's belief that she needed assistance.

## C.    Determination Whether Officer Had Reasonable Suspicion

The Court of Appeals improperly determined that the officer lacked reasonable suspicion to stop the appellant's vehicle.   An investigative detention is reasonable, and thus constitutional, if an officer has a reasonable suspicion that some activity out of the ordinary is occurring or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the unusual activity is related to a crime.   See *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).

Officer Figueroa had a reasonable suspicion to stop the appellant because he was in an area and at a time known for excessive partying; an odor of alcohol was wafting from his Tahoe; the female passenger was hunched over and seemingly unconscious; he deliberately ignored Officer Figueroa's inquiry whether his passenger needed assistance; and his conduct was

abnormal compared to people's normal response to police assistance inquiries. (R.R. I:6-7, 9-11). An odor of alcohol and a driver's odd behavior may justify reasonable suspicion. See *Harper v. State*, 349 S.W.3d 188, 192 (Tex. App. – Amarillo 2011, pet. refused) (odor of alcohol emanating from vehicle justified reasonable suspicion); *Newman v. State*, 2001 WL 279182, at *3 (Tex. App. – Houston [1st Dist.] March 22, 2001, no pet.) (not designated for publication) (defendant's nervousness and odor of alcohol created reasonable suspicion).

The majority opinion dismisses the *Newman* and *Harper* decisions because they involved a continued detention where the reasonable suspicion arose after the police officer stopped the driver for a traffic violation. See *Byram v. State*, 2015 WL 6134114, at *4. To the contrary, the "continued detention" status in those cases is not dispositive to the issue of whether the officer had a reasonable suspicion that the defendant was driving while intoxicated because it only meant that the officer was in a lawful position to develop his "reasonable suspicion". See *Harper v. State*, 349 S.W.3d at 192; *Newman v. State*, 2001 WL 279182, at *3. In the case herein, Officer Figueroa was in a lawful position parked on a public street to develop his reasonable suspicion without the need for any original traffic violation

detention to stop the appellant's vehicle.

In sum, when the circumstances and all their reasonable inferences are viewed in the light most favorable to the trial court's ruling, Officer Figueroa had a reasonable suspicion to stop the appellant for driving while intoxicated.

## CONCLUSION

The Court of Appeals misapplied the proper standard of review and acted as a "super-factfinder" in reversing the trial court's decision to deny the appellant's suppression motion.

## PRAYER

The State prays that this Court grant review in this cause, reverse the decision of the Court of Appeals, and affirm the trial court's decision.

Respectfully submitted,

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR
Chief, Post-Conviction

10

/s/ Steven W. Conder
STEVEN W. CONDER, Assistant
Criminal District Attorney
State Bar No. 04656510
401 W. Belknap
Fort Worth, Texas     76196-0201
(817) 884-1687
FAX (817) 884-1672
CCAAppellateAlerts@Tarrantcounty.tx.gov

CERTIFICATE OF SERVICE

A true copy of the State's petition for discretionary review has been electronically served on opposing counsel, the Hon. Richard A. Henderson, 100 Throckmorton Street, Suite 540, Fort Worth, Texas 76102 (richard@rahenderson.com), on this, the 13th day of November, 2015.

/s/ Steven W. Conder
STEVEN W. CONDER

CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes, and with the word-count limitations of Tex. R. App. P. 9.4(i) because it contains approximately 1559

11

words, excluding those parts exempted by Tex. R. App. P. 9.4(i)(1), as computed by Microsoft Office Word 2010 - the computer program used to prepare the document.

/s/ Steven W. Conder
STEVEN W. CONDER

c18.byram cameron.pdr/state




CAMERON BYRAM                                                                                   APPELLANT

V.

THE STATE OF TEXAS                                                                                   STATE

----------

FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY
TRIAL COURT NO. 1332976

----------

## OPINION

----------

### I. INTRODUCTION

In one issue, appellant Cameron Byram appeals the trial court's denial of his motion to suppress, which was followed by Byram pleading guilty to driving while intoxicated with an open container. We will reverse and remand.

## II. Background

Fort Worth Police Officer Figueroa[1] said that on July 4, 2013, he was in downtown Fort Worth "conducting preventative patrol" when he found himself stopped at a light in his patrol vehicle alongside Byram's vehicle. Figueroa said that his own window was down and that the passenger's window on Byram's vehicle was rolled all the way down. Figueroa testified that the female passenger in Byram's vehicle drew his attention because she "was sitting in the passenger seat . . . hunched over." Figueroa averred that he "didn't see any movement at all [from] the female." Given the female passenger's posture, Figueroa averred that he believed the passenger to be unconscious and "possibly [in need of] some medical attention." According to Figueroa, he suspected she might be suffering from "alcohol poisoning."

Figueroa also testified that he could smell the "odor of an alcoholic beverage coming from that vehicle." Figueroa said that he was "maybe less than ten feet" away from Byram's vehicle at the time. According to Figueroa, Byram was looking forward and not attending the female passenger. Figueroa said that he "yelled over to [Byram] to ask him if [the female passenger] was okay" but that Byram "ignored" Figueroa despite Figueroa's belief that Byram could hear him.

Figueroa testified that when the light turned green, Byram drove off. Figueroa interpreted Byram's actions as an attempt to "avoid contact with the

---

[1]We note that Figueroa's first name is not in the record.

police." Figueroa said that Byram's actions further raised his concerns for the passenger. Thus, Figueroa conducted a traffic stop. Figueroa said that upon stopping Byram, he immediately checked on the passenger; that she was "barely conscious"; and that it appeared to him that she "had some sort of medical problem." At that time, Figueroa said that he determined the passenger had "vomited . . . all over the passenger side of that vehicle." Figueroa called for medical attention, but when they arrived, the female passenger refused their assistance.

Figueroa testified that Byram had not committed a traffic offense; that there were not technical violations present on Byram's vehicle prior to him conducting the stop; and that the only reason he stopped Byram's vehicle was to perform a safety check on the passenger. Upon stopping Byram's vehicle, Figueroa said that he began to simultaneously conduct a safety check on the passenger and investigate Byram for driving while intoxicated (DWI). At the suppression hearing, the State stipulated that the stop of Byram's vehicle was not conducted pursuant to a warrant and that Byram's car was in the vicinity of several hospitals within a five-mile radius. The trial court denied Byram's motion to suppress. Byram then entered a plea of guilty, and the trial court assessed punishment at ninety days in jail and a $750 fine. The trial court then suspended Byram's sentence and placed him on community supervision for eighteen months. This appeal followed.

3

### III. DISCUSSION

In one issue, Byram argues that the trial court erred by denying his motion to suppress. Specifically, Byram argues that the community caretaking exception to the Fourth Amendment does not apply to the facts of this case. The State argues that the community caretaking exception applies in this case or, in the alternative, that Figueroa possessed reasonable suspicion to stop Byram.

#### A.     Standard of Review and Fourth Amendment Law

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex.

4

Crim. App.), *cert. denied*, 558 U.S. 1093 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

Under the Fourth Amendment, a warrantless arrest is unreasonable per se unless it fits into one of a "few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135 (1993); *Torres*, 182 S.W.3d at 901.

## B.     Community Caretaking Exception

The Court of Criminal Appeals has determined that a search or seizure is not "unreasonable" when it is done pursuant to a valid exercise of the community caretaking function. *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999) (citing *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S. Ct. 2523, 2528 (1973)). This exception is one of "narrow applicability." *Wright*, 7 S.W.3d at 152. Indeed, as the Court stated, "Only in the most unusual circumstances" will the community caretaking exception be applicable. *Id.* In *Wright*, the Court provided a list of four nonexclusive factors to be considered when deciding whether a search or seizure is justified by this narrow exception:

(1)     the nature and level of the distress exhibited by the individual;

(2)     the location of the individual;

(3)     whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and

(4)     to what extent the individual—if not assisted—presented a danger to himself or others.

*Id.* Even giving almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, our application of these factors to Byram's case leads us to conclude that the community caretaking exception does not apply.

As to the first factor, the single fact "exhibited" by Byram's passenger was that she appeared to be passed out.  It was not until after Figueroa effectuated his stop that he learned that the passenger had vomited, and even that fact would not have been sufficient to apply the narrow exception of community caretaking.  *See Andrews v. State*, 79 S.W.3d 649, 653 (Tex. App.—Waco 2002, pet. ref'd) (holding stop not reasonable when officer observed driver stop on shoulder, passenger open door and appear to vomit, and car drive off); *see also Wright v. State*, 18 S.W.3d 245, 247 (Tex. App.—Austin 2000, pet. ref'd) (holding stop not reasonable when officer observed passenger hang head out of window and appear to vomit).  Here, even though this factor is afforded the greatest weight of the factors to consider, its strength is fairly low in favor of the community caretaking exception.  *See Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002) ("Because the purpose of the community caretaking exception

6

is to allow an officer to 'seize' and assist an individual whom he reasonably believes is in need of help, the first factor is entitled to the greatest weight.").

As to the second factor, although there is evidence that Byram was in an area where individuals might be drinking alcohol, there is nothing in the record to demonstrate that the type of facts normally associated with this factor are present in this case. *See Morfin v. State*, 34 S.W.3d 664, 666 (Tex. App.—San Antonio 2000, no pet.) (considering it significant to community caretaking exception that vehicle approached by police was parked in "very high crime area"); *see also Chilman v. State*, 22 S.W.3d 50, 55 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (considering it significant that car was parked in "a spot where people normally do not park"). In this case, the vehicle was in a location where there were numerous people and vehicles, and as was stipulated by the State at the suppression hearing, it was stopped at a stoplight in an area near several hospitals within a five-mile radius. *See Corbin*, 85 S.W.3d at 278 ("Since there is nothing in the record indicating that this area is isolated with little traffic and no business or houses nearby, it cannot support the [community caretaking] ruling."). This factor weighs against application of the community caretaking exception.

As to the third factor, Byram's passenger was not alone. There is nothing in the record to indicate that the passenger did not have access to assistance independent of Figueroa. *See id.* (reasoning that third factor applied when individual was alone and without assistance other than from arresting officer).

7

This factor as well weighs against application of the community caretaking exception.

As to the fourth factor, there is no evidence that supports that Byram's passenger presented a danger to herself or others. Much like in our analysis of the first factor, the only facts relied upon by Figueroa were that the passenger appeared "hunched over" in the passenger seat of Byram's vehicle and that he smelled the odor of an alcoholic beverage emitting from the vehicle. We simply cannot conclude that the "narrow applicability" of the community caretaking exception, when applied to a "hunched over" passenger who was in a vehicle that smelled of an alcoholic beverage, indicates that the passenger presented a danger to herself or others. This factor weighs against application of the community caretaking exception.

We conclude that along the "community caretaking distress spectrum," this case strongly tends to involve no apparent distress. *See Wiseman v. State*, No. 02-06-00021-CR, 2006 WL 3334171, at *7 (Tex. App.—Fort Worth Nov. 16, 2006, pet ref'd) (mem. op., not designated for publication). Indeed, the passenger who Figueroa said he felt needed assistance did not appear to be in any great distress, she was located in a busy area of town where there were nearby hospitals, she was not alone, and she did not appear to be a danger to herself or others. *See Id.* ("In the community caretaking distress spectrum, the most severe distress tends to involve solo drivers in some sort of trouble.").

## C.    No Reasonable Suspicion to Detain Byram

The State argues that the trial court had an independent reason to deny Byram's motion to suppress.  Specifically, the State argues that Figueroa had "reasonable suspicion to stop" Byram because he was in an area and at a time "known for excessive partying"; that the odor of alcohol was "wafting" from Byram's vehicle; that the female passenger was "hunched over"; and that Byram's decision to ignore Figueroa was "abnormal."  The State argues that the totality of these circumstances gave rise to Figueroa having a reasonable suspicion to stop Byram.  The State does not directly identify what "crime" Figueroa had suspicion of.

In support of its position, the State cites to two cases where the odor of alcohol coupled with other behavior was found sufficient reasonable suspicion to investigate alcohol-based offenses.  *Harper v. State*, 349 S.W.3d 188, 192 (Tex. App.—Amarillo 2011, pet. ref'd) (possession of marihuana and open container); *Newman v. State*, No. 01-00-00106-CR, 2001 WL 279182, at *1 (Tex. App.— Houston [1st Dist.] Mar. 22, 2001, no pet.) (op., not designated for publication) (possession of marihuana).  But the State's reliance on these cases is misplaced. Both *Harper* and *Newman* involved a continued detention after a vehicle had been lawfully stopped for a traffic violation and where the detaining officers developed reasonable suspicion upon encountering the suspects face-to-face. *Harper*, 349 S.W.3d at 192 (holding officer who stopped vehicle for a non-working taillight had probable cause to conduct warrantless search where officer

9

smelled odor of alcohol and passenger admitted that there was an open container of alcohol and marihuana in the vehicle); *Newman*, 2001 WL 279182, at *1 (holding that continued detention was justified where two officers smelled strong odor of alcohol on defendant and defendant gave suspicious answers to questions and he appeared to not want officers to search his vehicle).

Here, Figueroa smelled the "odor of an alcoholic beverage" from the vantage of his vehicle in an area where admittedly there were numerous people in Figueroa's direct vicinity—a vicinity that Figueroa described as being a "4th of July weekend celebration" where there was "a lot of partying" occurring. Further, we are loathe to find that Byram's exercise of his constitutional right to ignore a police officer is "abnormal." *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995) ("While a law enforcement officer is free to approach a citizen and ask questions, the citizen is also free to not answer the questions."). And we have already addressed that Byram's passenger having been "hunched over" was insufficient to support Figueroa's stop of Byram's vehicle.

We do not question the good faith of Figueroa's subjective suspicion that Byram might have been involved in an alcohol-based offense. Nevertheless, so long as consumption of alcohol is not illegal in and of itself, a standard permitting or requiring detention and investigation of persons for alcohol-based offenses solely on whether the odor of alcohol is present invites unwarranted police intrusions into the affairs and freedom of persons. *See Terry*, 392 U.S. at 21–22, 88 S. Ct. at 1880. Because of the absence of articulable facts which could

10

reasonably raise a suspicion that Byram was engaged in an alcohol-based offense, Figueroa's stopping him violated Byram's Fourth Amendment rights. *See Domingo v. State*, 82 S.W.3d 617, 622 (Tex. App.—Amarillo 2002, no pet.) (holding no reasonable suspicion existed to support detention when defendant's conversation with officer occurred at 9:00 p.m. in high-crime area, defendant was part of a group that was lawfully socializing and drinking alcohol without engaging in disruptive or illegal activities, and the officer was not responding to or investigating reports of criminal activity); *see also Clement v. State*, 461 S.W.3d 274, 282 (Tex. App.—Eastland 2015, pet. granted) (holding that State failed to establish that police officer had probable cause to arrest defendant for driving while intoxicated where officer had not specifically testified about any physical observations he made of defendant's eyes, speech, or movement, and officer relied upon the fact that he smelled alcohol on defendant to conduct the arrest). We hold that the trial court abused its discretion by denying Byram's motion to suppress.

### E.    Harm

We further hold that because Byram was seized in violation of his constitutional rights and he pleaded guilty only after the trial court's denial of his motion to suppress, the trial court's incorrect finding caused Byram harm.  *See* Tex. Rule App. P. 44.2(a); *see also Holmes v. State,* 323 S.W.3d 163, 172–74 (Tex. Crim. App. 2009) (holding that trial court's denial of appellant's motion to

11

suppress is deeply connected to decision to plead guilty).  We sustain Byram's

sole issue.

## IV. CONCLUSION

Having sustained Byram's sole issue, we reverse the trial court's judgment

and remand this case to the trial court for a new trial or further proceedings

consistent with this opinion.  *See* Tex. R. App. P. 43.2(d).


/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

WALKER, J., filed a dissenting opinion.

PUBLISH

DELIVERED:  October 15, 2015

B



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00343-CR

---

CAMERON BYRAM                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY
TRIAL COURT NO. 1332976

----------

## DISSENTING OPINION

----------

## I. Introduction

I respectfully dissent. The majority fails to view the evidence and all its reasonable inferences in the light most favorable to the trial court's denial of Appellant Cameron Byram's motion to suppress and fails in its analysis of the community-caretaking exception to conduct an objective review focusing on what Officer Figueroa observed.

## II. The Facts

At the motion-to-suppress hearing, Fort Worth Police Officer Figueroa was the only witness. He testified that on July 4, 2013, at approximately 5:30 p.m., he was patrolling the bar district in downtown Fort Worth. Because it was a holiday, there was "a lot of partying" going on and a lot of vehicle and pedestrian traffic. Officer Figueroa stopped his patrol car at a red light at the intersection of 4th Street and Houston Street. He had his windows down, and a black Chevy SUV pulled up at the light "right next" to the driver's side of Officer Figueroa's patrol car. The SUV had its passenger-side window "rolled all the way down" giving Officer Figueroa an unobscured view into the SUV. Officer Figueroa looked over at the SUV and noticed a female hunched over in the front seat. He smelled the odor of alcohol wafting from the vehicle. The female passenger was not moving and Officer Figueroa was concerned that she was unconscious, had alcohol poisoning, or possibly needed medical attention. Officer Figueroa could see the driver of the SUV and "yelled over to him," asking if the female passenger was okay. Officer Figueroa had no doubt that the SUV's driver heard him yell, but the driver ignored Officer Figueroa and "just look[ed] forward." The light turned green; the driver ignored Officer Figueroa and drove off. This raised a further concern to Officer Figueroa that the SUV driver was trying to avoid contact with police; typically, people respond to questions from police officers.

Because he was concerned about the female passenger, Officer Figueroa initiated a traffic stop at the 400 block of West 4th Street. When he approached

the driver's side of the SUV, he observed that the front-seat female passenger had vomited all over herself and the passenger side of the SUV and that she was barely conscious. Officer Figueroa determined that the passenger "had some sort of medical problem" and "immediately" called Medstar. An ambulance arrived within two minutes. Officer Figueroa determined that the SUV's driver, Byram, was intoxicated and arrested him.

### III. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). However, when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact. *Id.* When the trial court does not make explicit findings of historical facts, as in the instant case, we review the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supporting its ruling, so long as those findings are supported in the record. *Carmouche,* 10 S.W.3d at 327–28.

3

## IV. The Community-Caretaking Exception to the Warrant Requirement

The law is well settled that, even without reasonable suspicion or probable cause that an offense has been committed, a police officer may reasonably seize an individual through the exercise of his community-caretaking function. *See, e.g.*, *Gonzales v. State*, 369 S.W.3d 851, 854–55 (Tex. Crim. App. 2012) (holding community-caretaking exception applied when police officer observed vehicle pull onto shoulder of road in isolated area and pulled in behind vehicle to "see if everything was okay"); *Wright v. State*, 7 S.W.3d 148, 151–52 (Tex. Crim. App. 1999) (holding community-caretaking exception applied when police officer observed front-seat passenger leaning out window of moving car and vomiting). As part of his duty to "serve and protect," a police officer may stop and assist an individual whom a reasonable person—given the totality of the circumstances—would believe is in need of help. *Wright*, 7 S.W.3d at 151.

Determining whether an officer has properly invoked the community-caretaking function is a two-step process. *Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002). First, the reviewing court must determine whether the officer was primarily motivated by a community-caretaking purpose. *Id.* Second, the court must determine whether the officer's belief that assistance was required was reasonable. *Id.* Courts consider four nonexclusive factors in determining whether the officer's belief that the defendant needed help was reasonable: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone or had

4

access to assistance other than that offered by the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others. *Id.*

## V. Analysis

Under the first prong of the community-caretaking analysis, the trial court here implicitly found that when Officer Figueroa stopped the SUV, he was primarily motivated by a community-caretaking purpose.[1] The evidence supports this implicit finding; Officer Figueroa testified that he stopped the SUV because of his concern for the female passenger.[2] *See id.* ("The trial court, as the exclusive judge of credibility and finder of fact, could have concluded that [the officer] was primarily motivated by community caretaking concerns.").

Under the second pong of the community-caretaking analysis, the trial court implicitly found that, given the totality of the circumstances, Officer Figueroa's belief that assistance was required was reasonable. Viewed in the light most favorable to the trial court's ruling, the evidence presented at the suppression hearing established that at approximately 5:30 p.m. on the Fourth of July holiday, the female front-seat passenger was hunched over and not moving in a vehicle that smelled of alcohol and was being driven in the "bar district" of downtown Fort Worth by a man who was unconcerned about her condition and refused to respond to Officer Figueroa's inquiry about the woman's status.

---

[1]The trial court issued no express findings of fact or conclusions of law.

[2]Byram does not challenge this component of the community-caretaking exception.

Looking to the four nonexclusive factors to assess the reasonableness of Officer Figueroa's belief that the female passenger needed assistance, the nature and level of the female's distress was significant—she was not moving and appeared unconscious. The female's location—in a vehicle driven by a man who appeared unconcerned about her well-being—was precarious. Her access to assistance was doubtful for this same reason—the man driving the SUV exhibited no concern about his passenger in response to Officer Figueroa's query about her condition.[3] And the female was a danger to herself; she appeared comatose and incapable of asking for help. Thus, all four factors—the female's level of distress, her location, her lack of access to assistance, and the danger to herself—support the reasonableness of Officer Figueroa's belief that she needed assistance. Based on this objective analysis focusing on what Officer Figueroa observed, I would hold that the trial court properly determined that Officer Figueroa's belief that the female passenger needed assistance under his

---

[3]The majority points out that hospitals were nearby and that the female was not alone. But these two facts do not make Officer Figueroa's decision to stop the SUV less reasonable because Byram ignored Officer Figueroa's question concerning the female's condition and exhibited no concern about her, which gave rise to a reasonable inference that he had no intention of providing assistance. *See Flores v. State*, No. 04-13-00548-CR, 2014 WL 7340279, at *3 (Tex. App.—San Antonio Dec. 23, 2014, no pet.) (mem. op., not designated for publication) (holding community-caretaking exception applied when police officer observed car parked in McDonald's parking lot at 3:00 a.m. even though drive-through lane was open and employees were inside the restaurant because "there were no signs that anyone from the restaurant was assisting [the driver]").

community-caretaking responsibilities was reasonable under the totality of the circumstances. *See Gonzales,* 369 S.W.3d at 856.

Accordingly, after viewing the evidence and the reasonable inferences from the evidence in the light most favorable to the trial court's ruling, I would hold that the trial court did not abuse its discretion in determining that Officer Figueroa was primarily motivated by community-caretaking concerns and reasonably believed that assistance was required. *See, e.g., Lollie v. State*, 465 S.W.3d 312, 315–17 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding community-caretaking exception applied to officer's decision to pull over car driving slowly on isolated, dark road). Thus, the community-caretaking exception to the warrant requirement applied.

## VI. Conclusion

For the reasons set forth above, I would overrule Byram's sole issue and affirm the trial court's denial of his motion to suppress.[4] Because the majority does not, I dissent.

/s/ Sue Walker
SUE WALKER
JUSTICE

PUBLISH

DELIVERED: October 15, 2015

---

[4]Because I would affirm the trial court's denial of Byram's motion to suppress based on the community-caretaking exception, I would not reach the State's alternative argument that the stop was supported by reasonable suspicion.

7