NO. 07-00-0377-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MAY 29, 2002

_____

ANTHONY DOMINGO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE COUNTY COURT AT LAW NO. 2 OF LUBBOCK COUNTY;

NO. 2000-469312; HONORABLE DRUE FARMER, JUDGE

_____

Before QUINN and REAVIS and JOHNSON, JJ.

Appellant Anthony Domingo appeals his conviction for failure to identify himself to a peace officer while under detention and while a fugitive from justice. He asserts as error that (1) evidence supporting his conviction was the fruit of a detention in violation of his Fourth Amendment rights, and (2) the State improperly argued to the jury by making personal attacks on defense counsel and by commenting on defendant's failure to testify. We reverse and remand.

BACKGROUND

At approximately nine o'clock in the evening of April 20, 2000, officers of the Lubbock Police Department Gang Intelligence Unit ("gang unit") stopped to talk, on a consensual basis, with appellant Anthony Domingo and other persons who were congregated in the vicinity of a residence in an area of the City of Lubbock which had a reputation for being the scene of gang and drug-related activities. The officers wore distinctive black bulletproof vests with the word "Police" written across the vests and they were clearly identifiable as police officers. The stop was in accordance with the habit of members of the gang unit to engage in consensual conversations with residents and others in areas where they were on duty. The persons in the group were "drinking some beer" and talking. No reports of loud noise, improper behavior or excessive consumption of alcohol had been made, nor did the gang unit officers observe any suspicious activity or conduct to cause them to stop.

Officer Eric Tijerina testified that he engaged appellant in what Tijerina termed a consensual conversation. When Tijerina first saw appellant, appellant was leaning against a car talking.[1] Tijerina did not see appellant drink any beer or other alcohol. Appellant then got up on the hood of the car, where he was sitting when the conversation began.

_____

[1]Appellant testified at the suppression hearing that without any explanation or forewarning he was approached by an officer in his house and instructed to come outside and identify himself. He did not testify at trial. Our recitation of facts is from testimony of the police officers because we view the evidence in the light most favorable to the trial court's ruling. See Garcia v. State, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001); Loserth v. State, 963 S.W.2d 770, 774 (Tex.Crim.App.1997).

2

Tijerina kept a distance of approximately five feet between himself and appellant for officer safety, because Tijerina did not know appellant. Tijerina noticed that appellant had a "strong" odor of alcohol on his breath. Based on the strong odor of alcohol, Tijerina suspected that appellant might be intoxicated and decided to investigate appellant for public intoxication. Tijerina testified that when he detected the strong odor of alcohol and decided to investigate, he detained appellant and appellant was not free to leave.

Tijerina then asked appellant to identify himself. Appellant gave his name as Anthony Thomas, gave a birth date, and stated that he had been arrested previously. Tijerina had the name checked through the police computer system and found no record. Tijerina became suspicious that appellant had given a false name and that appellant might have some reason to hide his true identity, because if appellant had been arrested before, the computer system would have so reflected.

Appellant was then interviewed by other officers. He declined to change his story about what his name was. He was taken to the police station so further identification procedures could be run. While he was at the police station, it was discovered that he had indeed given a false name to the officers; his true identity was discovered; and it was discovered that arrest warrants for him were outstanding. Appellant was charged with having intentionally and knowingly given a false report of his name to a peace officer who

3

had lawfully detained him, and appellant having been a fugitive from justice at the time. See Tex. Pen. Code Ann. § 38.02 (Vernon 1994).[2]

Appellant sought to suppress evidence obtained as a result of his detention for investigation of possible public intoxication, including his identification of himself as Anthony Thomas. Following a pre-trial hearing, the motion to suppress was denied. On appeal, appellant urges that the trial court erred in refusing to suppress his false identification statements because Tijerina's detention of him for investigation of possible public intoxication was a violation of his Fourth Amendment rights. Appellant also asserts that the prosecutor made improper jury arguments. Because appellant's first issue is dispositive of the appeal, we will not address the issues alleging improper jury argument. See Tex. R. App. P. 47.1.

## STANDARD OF REVIEW

In reviewing trial court rulings on motions to suppress, appellate courts afford almost total deference to trial court determinations of historical facts and to decisions involving mixed questions of law and fact if the resolution of those questions depends on an evaluation of credibility and demeanor. See Garcia, 43 S.W.3d at 530. Mixed questions of law and fact not dependent on evaluation of credibility and demeanor are reviewed *de novo*. Id.

---

[2]Reference to a provision of the Penal Code hereafter will be by reference to "Penal Code § _."

Detention and reasonable suspicion are legal concepts subject to *de novo* review. See Garcia, 43 S.W.3d at 531; Hunter v. State, 955 S.W.2d 102, 107 (Tex.Crim.App. 1997). For purposes of Fourth Amendment analysis we give appropriate deference to the trial court's determination of historical facts, but we review the decision of the trial court *de novo* as to whether the historical facts, viewed from the standpoint of an objectively reasonable person so situated as was the police officer, could amount to "reasonable suspicion" sufficient to justify an investigatory detention. See Ornelas v. United States, 517 U.S. 690, 697-99, 116 S.Ct. 1657, 1661-62, 134 L.Ed.2d 911 (1996); Garcia, 43 S.W.3d at 531.

The general rule is that only evidence adduced at the suppression hearing is considered in our review because the ruling was based on that evidence rather than evidence introduced later. See Rachal v. State, 917 S.W.2d 799, 809 (Tex.Crim.App.), cert. denied, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 539 (1996). The general rule is inapplicable where the suppression issue has been consensually relitigated by the parties during trial on the merits. Id. If the State raises the issue at trial either without objection or with subsequent participation in the inquiry by the defense, the defendant is deemed to have made an election to re-open the evidence and relevant trial testimony on the issue is also to be considered on appeal. Id. In this matter, appellant did not object to the State's trial testimony on the issue and vigorously participated via cross-examination of the State's witnesses. Thus, we consider the records of both the suppression hearing and the trial in our review.

5

LAW

A person commits an offense by giving a false or fictitious name, residence address, or date of birth to a peace officer if the peace officer (1) has lawfully arrested or detained the person, or (2) has requested the information from a person that the peace officer has good cause to believe is a witness to a criminal offense. See Penal Code § 38.02(b). As applicable to this appeal, therefore, we must determine if appellant was under lawful detention for investigation of public intoxication at the time he first gave false identification to Tijerina.

The elements of public intoxication are: (1) a person appears in a public place, (2) while intoxicated, (3) to the degree that he may be a danger to himself or another. See Penal Code § 49.02(a). "Intoxicated" means (1) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of these substances, or any other substance into the body, or (2) having an alcohol concentration of .08 or more. Penal Code § 49.01(2).

A police officer may stop and briefly detain a person suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. See Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906-07 (1968). An investigative detention may be based on a reasonable suspicion if the suspicion is founded on articulable facts that, in light of the officer's experience and general knowledge, could

reasonably lead to the suspicion that criminal activity is afoot and the detained person is connected with the activity. See Garcia, 43 S.W.3d at 530. The determination of whether the officer's suspicion of criminal activity is reasonable is made by evaluation of the totality of the circumstances at the time of the detention. See Terry, 392 U.S. at 21-22, 88 S.Ct. at 1880; Garcia, 43 S.W.3d at 530. The circumstances must be examined by considering the inferences and deductions that a trained police officer would be entitled to make. See United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). An officer's mere suspicion or good-faith perception, without more, is insufficient to constitute cause to initiate an investigatory detention. See Hoag v. State, 728 S.W.2d 375, 379 (Tex.Crim.App. 1987); Sanders v. State, 992 S.W.2d 742, 744-45 (Tex.App.--Amarillo 1999, pet. ref'd). The test for reasonable suspicion is not whether the detained person's conduct is innocent or guilty, but rather the degree of suspicion that attaches to the conduct. See Holladay v. State, 805 S.W.2d 464, 473 (Tex.Crim.App. 1991). Where the investigative detention is unlawful, any evidence obtained subsequent to such detention is inadmissible. See Garcia, 43 S.W.3d at 529, 532; Gurrola v. State, 877 S.W.2d 300, 302 (Tex.Crim.App. 1994).

ANALYSIS

Tijerina was a nine-year police veteran who had previously served as a patrol officer and had made numerous arrests for intoxication and administered numerous field sobriety tests. He testified that the only circumstance which led him to detain appellant for investigation as of the time of the detention was the strong odor of alcohol on appellant's

7

breath.[3]  He had no other indication that appellant was intoxicated.  Tijerina testified that he detected the odor at the beginning of the conversation while talking to appellant from a distance of approximately five feet; the strong odor of alcohol made him suspect that appellant might be intoxicated; and appellant was under detention from the time Tijerina smelled the strong odor.

The record reveals that the only physical movement Tijerina saw appellant make was when appellant moved to the hood of the car where he was sitting during the conversation.  Tijerina noted nothing out of the ordinary about that movement.  Tijerina noticed nothing abnormal about appellant's speech or eyes before the detention, nor did he see appellant drink any alcoholic beverages.  Tijerina did not have indications of how much alcohol appellant had ingested or how long appellant had been drinking.  Appellant was acting "normal" until the time Tijerina determined to detain him.  The conversation took place about 9:30 p.m.  Appellant was part of a group of persons seemingly lawfully socializing and drinking beer without engaging in disruptive or illegal activities.  The officers were not responding to or investigating reports of criminal activity.  The scene of the gathering was known to the officers as a high crime and drug traffic area, but that factor entered into Tijerina's thought processes only to the extent that officer safety

---

[3]A second officer, who did not testify at the suppression hearing, testified at trial that some time after appellant was detained by Tijerina, the second officer observed that appellant's eyes were bloodshot and appellant's speech was slurred.  We do not consider the second officer's observations in our determination of whether appellant's initial detention was valid.  See Terry, 392 U.S. at 19-20, 88 S.Ct. at 1878-79; Garcia, 43 S.W.3d at 530.

prompted Tijerina to require appellant to identify himself after he was detained for investigation of being publicly intoxicated.

In examining the legality of appellant's detention we are not confined to Tijerina's subjective suspicions and subjective reasons in making the detention, for the test is an objective one based upon the totality of the circumstances. See Ornelas, 517 U.S. at 697-99, 116 S.Ct. at 1661-62; Garcia, 43 S.W.3d at 531. In reviewing the totality of the circumstances surrounding the detention, however, we do not find articulable facts which could have led a reasonable officer to suspect appellant of public intoxication other than the strong odor of alcohol about which Tijerina testified and on which he based his suspicion.

We do not discount Tijerina's experience as an officer who had previously encountered intoxicated persons with no physical signs of intoxication. Nor do we question the good faith of the officer's subjective suspicion that appellant might have been intoxicated. Nevertheless, so long as consumption of alcohol is not illegal in and of itself, a standard permitting or requiring detention and investigation of persons for public intoxication based solely on whether the odor of alcohol on a person's breath is "strong," "moderate," "weak" or some other such subjective classification invites unwarranted police intrusions into the affairs and freedom of persons. See Terry, 392 U.S. at 21-22, 88 S.Ct. at 1880. Because of the absence of articulable facts which could reasonably raise a suspicion that appellant had either impaired mental or physical faculties due to alcohol consumption, or a blood alcohol level of .08 or more, appellant's detention for investigation

9

of public intoxication violated his Fourth Amendment rights.  Compare Stoutner v. State, 36 S.W.3d 716, 720 (Tex.App.--Houston [1st Dist.] 2001, pet. ref'd) (appellant's statement to police that he had been out drinking with his friend who had just been arrested for DWI and that appellant was following his friend home was sufficient to warrant investigatory detention for DWI); Jones v. State, 949 S.W.2d 509, 516 (Tex.App.--Ft. Worth 1997, no pet.) (evidence that description of reportedly intoxicated driver fit appellant and that officer observed appellant with bloodshot eyes, slurred speech and sluggish movements justified investigatory detention for public intoxication); State v. Brabson, 899 S.W.2d 741, 749 (Tex.App.--Dallas 1995), affirmed 976 S.W.2d 182 (appellant's honking horn of automobile excessively at 2:50 a.m. and having strong odor of alcohol on breath were sufficient facts to justify investigatory detention).

## CONCLUSION

Appellant's false identification subsequent to and pursuant to his unlawful detention was inadmissible.  The trial court erred in overruling appellant's motion to suppress.  See Garcia, 43 S.W.3d at 529, 531; Gurrola, 877 S.W.2d at 302.  The judgment is reversed and the cause is remanded for further proceedings in accordance with this opinion.


                                        Phil Johnson
                                        Justice


Publish.

10