

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00065-CR

CHARLES JAMES SNYDER                                    APPELLANT

V.

THE STATE OF TEXAS                                            STATE

-----------

FROM COUNTY CRIMINAL COURT NO. 8 OF TARRANT COUNTY
TRIAL COURT NO. 1295355

-----------

## MEMORANDUM OPINION[1]

-----------

## I. Introduction

In two issues, Appellant Charles James Snyder appeals the denial of his motion to suppress and the sufficiency of the evidence to support his conviction for failure to identify, arguing that there was no lawful detention. We reverse the trial court's judgment and render a judgment of acquittal.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Suppression

In his first issue, Snyder argues that the trial court erred by denying his motion to suppress because the State failed to establish that there was a lawful detention when Forest Hill Police Sergeant Curt Leach asked him to identify himself.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

A detention, as opposed to an arrest, may be justified on less than probable cause if an officer reasonably suspects a person of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488,

2

492 (Tex. Crim. App. 2005). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, lead him to conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. That is, an officer must have reasonable suspicion that some activity out of the ordinary is occurring or has occurred, have some suggestion to connect the detained person with the unusual activity, and have some indication that the activity is related to a crime. *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987). This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Ford*, 158 S.W.3d at 492.

## B. Suppression Hearing

At the suppression hearing, Sergeant Leach testified that on August 27, 2012, he was on his daily patrol in a high-crime area at around 4:15 p.m. when he saw a bike tire in some bushes. He drove past the area and saw someone hiding in the bushes in a fetal position on the ground; he made eye contact with that person and thought that the person might be trying to hide from him. By the time Sergeant Leach turned his vehicle around, he could not find the person he had seen in the bushes. Sergeant Leach stopped a man on a bicycle and then let that man go after his name checked out clear. Sergeant Leach then drove back past the bushes—three additional police officers in squad cars joined him—and found Snyder.

3

At gunpoint, Sergeant Leach asked Snyder why he had been hiding. When Snyder responded that he had not been hiding, Sergeant Leach responded by stating, "[W]hat games are you F-ing playing out here." Snyder told him that he was not playing games. Sergeant Leach then asked him what he was doing out there, and Snyder replied, "I don't know." Sergeant Leach asked Snyder if he was drunk or a pervert, and Snyder said, "Neither."

After Sergeant Leach told Snyder several times to show him his hands, he warned Snyder that they would tase him. Sergeant Yancy told Snyder that if he tried to escape, they would shoot him in the side. When Sergeant Leach pulled Snyder from the bushes, he detained him in handcuffs because he thought Snyder's location and actions were suspicious. Sergeant Leach said that he did not find any weapons or anything illegal on Snyder when he conducted a pat-down.

Sergeant Leach asked Snyder for his name, and Snyder replied, "Jim James Morgan." Sergeant Leach asked Snyder for his date of birth, and Snyder said, "January 7th, 1957." Snyder gave the officer the same name, same date of birth, and same social security number each time he asked. When Sergeant Leach asked Snyder if he had a driver's license or state identification, Snyder told him that he had a Michigan identification. Sergeant Leach said that if this had been true, he would have been able to find him in the computer system, but when he checked for driver's licenses under Jim Morgan in Michigan, he did not get any returns.

4

Sergeant Leach then asked Snyder if he had ever been arrested and if he had identification in any other states. Snyder said Ohio, but when Sergeant Leach tried to find Jim Morgan in the computer with an Ohio identification, he did not find anyone. Sergeant Leach said at that point, he suspected Snyder was being dishonest and that he was giving false identifying information. Based on this, he decided to take Snyder to the Tarrant County Jail to further attempt to identify him.[2] Sergeant Leach acknowledged on cross-examination that just because nothing comes back when a name is run through the system, this does not mean that a person is lying. The trial court watched State's Exhibit 1, the dashboard camera video-recording of the incident.[3]

At the conclusion of the suppression hearing, Snyder argued that Sergeant Leach lacked reasonable suspicion to detain him and that the detention then elevated to the level of an arrest without probable cause. The trial court stated that as to reasonable suspicion, it was a close call but that given the facts—"the bicycle standing in a bunch of bushes in a high-crime area" and Sergeant

---

[2]Using the Tarrant County jail's iris scan, Snyder was identified in less than a minute with his real name and real date of birth, which were not the ones he had given to Sergeant Leach. The proper identification revealed that Snyder had an active warrant for his arrest on a probation violation.

[3]The dashboard camera video shows that when Sergeant Leach arrived at the scene, two patrol cars were already parked on the street a few feet from where they detained Snyder. Once Sergeant Leach arrived, one officer pulled his vehicle closer, and a few seconds later another officer arrived, totaling four patrol cars. The officers yelled at Snyder to show his hands, threatened to tase him, and then threatened to shoot him in the side if he ran.

Leach's letting the other bicycle rider go after identifying him—it would deny the motion. The trial court concluded that Sergeant Leach had probable cause to arrest once Snyder gave him a fake name.

## C. Analysis

Snyder argues that Officer Leach did not have reasonable suspicion that Snyder had committed any crime and that therefore there was no lawful detention. Snyder asserts that the only information known to Sergeant Leach before he took Snyder to the police station was that Snyder was on the side of the road under a bush and that he told officers his name was Jim James Morgan.

Snyder cites *St. George v. State* for the proposition that misidentification together with nervousness is not sufficient to raise reasonable suspicion to support a detention. 237 S.W.3d 720, 726 (Tex. Crim. App. 2007). In *St. George*, the defendant was a passenger in a car that officers stopped for a traffic violation. *Id.* at 722. The defendant initially gave a false name and date of birth, which the officers were unable to locate in their system. *Id.* After officers issued the traffic citation to the driver, they continued to question the defendant about his identity. *Id.* They eventually obtained the defendant's correct name and discovered he had outstanding warrants. *Id.* The officers arrested the defendant, and in a search incident to arrest, they found marijuana on his person. *Id.*

The officers in *St. George* did not learn that the defendant had misidentified himself until after they had issued the citation to the driver; at that

6

point, the lawful detention of the driver and the passenger had ended. *Id.* at 726. Had the officers developed reasonable suspicion that the defendant was engaged in criminal activity *during* the stop, the continued detention and investigation would have been reasonable. *Id.* at 722. However, nervousness alone is not enough to amount to reasonable suspicion, and "giving a false name when officers did not know it was false could not give them reasonable suspicion to investigate further, nor was the fact that the dispatcher found no record of the first name given by [the defendant] sufficient to raise suspicion of criminal activity." *Id.* at 726; *see also Carmouche*, 10 S.W.3d at 328 (stating that the same standard applies to pedestrians or vehicle occupants).

The State argues that concealment in a high-crime area is sufficient to establish reasonable suspicion and relies on federal cases that are distinguishable on the facts of this case.[4] In the first case, *United States v. Sims*, officers reported to a shots-fired call. 296 F.3d 284, 285 (4th Cir. 2002). When they arrived at the scene, they had the suspect's description, the defendant was the only person there and matched the suspect's description, and the defendant was located not far from where the shots had been fired a few minutes before the

---

[4]The State equates flight with concealment, but while flight and hiding may both indicate consciousness of guilt, *see, e.g.*, *Jordan v. State*, Nos. 02-12-00470-CR, 02-12-00471-CR, 02-12-00472-CR, 2014 WL 1663404, at *4 (Tex. App.—Fort Worth Apr. 24, 2014, no pet.) (mem. op., not designated for publication), Sergeant Leach's subjective opinion that Snyder was trying to hide is not dispositive. *See Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

call. *Id.* at 287. The court stated that an officer could have reasonably concluded that the defendant was evading the officers, stating that the "[defendant's] behavior, while apparently evasive, was well short of 'headlong flight' *and might not have given rise to reasonable suspicion in a different context.*" *Id.* (emphasis added). In contrast, Sergeant Leach was not responding to any calls and did not have a description of a suspect because he was not looking for a suspect, and there were people other than Snyder in the area.

In the second federal case, *United States v. Peterson*, plain-clothes officers were patrolling a high-crime area when they saw three men standing on the sidewalk. 100 F.3d 7, 9 (2d Cir. 1996). The men ducked behind a car when they saw the officers. *Id.* This made the officers suspicious, and they approached the men. *Id.* at 10. The court concluded that this was a consensual encounter because two of the men left without hindrance; because the initial encounter was consensual, the court did not determine whether the fact that the men had ducked behind a car, by itself, was sufficient to support reasonable suspicion. *Id.* at 9–11. In contrast, Sergeant Leach immediately detained Snyder during their initial contact by pulling his weapon and ordering Snyder out of the bushes. *Cf. St. George*, 237 S.W.3d at 726 (stating that absent reasonable suspicion, officers may conduct only consensual questioning).

Here, Snyder's false identity was suspected but not known to the police until after they had already detained him and taken him to jail.[5] *See id.* Sergeant Leach saw Snyder at 4:30 p.m. in a high-crime area where no crime had been reported, and the basis for the stop by Sergeant Leach and three other police officers was that Sergeant Leach thought Snyder was hiding from him. *See Domingo v. State*, 82 S.W.3d 617, 618 (Tex. App.—Amarillo 2002, no pet.) (holding no reasonable suspicion existed to support detention when defendant's conversation with officer occurred at 9:00 p.m. in high-crime area, defendant was part of a group that was lawfully socializing and drinking alcohol without engaging in disruptive or illegal activities, and the officer was not responding to or investigating reports of criminal activity);[6] *Scott v. State*, 549 S.W.2d 170, 172–73

---

[5]Sergeant Leach drew Snyder from the bushes at gunpoint and used profanity as he questioned him, while another officer threatened to shoot Snyder if he tried to escape. These acts indicate an arrest without probable cause rather than a mere detention. *See Campbell v. State*, 325 S.W.3d 223, 234 (Tex. App.—Fort Worth 2010, no pet.) (listing factors involved in determining whether a seizure is an arrest or a detention, including degree of force and the reasonableness of the intrusion); *see also Terry*, 392 U.S. at 19–20; 88 S. Ct. at 1878–79 (requiring an officer's actions to be justified at their inception and to be reasonably related in scope to the circumstances that justified the interference in the first place).

[6]In *Domingo*, after the police officer detected a strong odor of alcohol on the defendant's breath, he detained him for further investigation. 82 S.W.3d at 619. Once detained, the defendant gave a false name and date of birth to the officer. *Id.* When the officer was unable to locate the defendant in the system, he suspected that he had been given a false name and took the defendant to the police station for further identification. *Id.* At the police station, he confirmed that the defendant had given him a false name and that the defendant had outstanding warrants. *Id.*

(Tex. Crim. App. 1976) (holding that no reasonable suspicion existed when officer patrolling a high crime area was aware of recent thefts and saw defendant drive a sparsely traveled street at 1:30 a.m. with "sheeting material" in his car's back seat). *Compare Jones v. State*, 926 S.W.2d 386, 389 (Tex. App.—Fort Worth 1996, pet. ref'd) (holding no reasonable suspicion existed when officers saw defendant's truck emerge at 10:25 p.m. from public park that had previously been used by people to smoke marijuana, have sex, abandon stolen vehicles, and conceal minors drinking alcohol and that was located across from some recently burglarized homes), *with Balentine v. State*, 71 S.W.3d 763, 766–69 (Tex. Crim. App. 2002) (concluding that officer reporting to a shots-fired call had reasonable suspicion to detain defendant when it was 2:26 a.m. in a residential, low-traffic area, and the officer saw the defendant across the street from the scene before defendant walked briskly away and appeared nervous, constantly looking over his shoulder at the officer). Other than Snyder's location in the bushes in a high-crime area, no other facts support an inference that criminal activity had or would be occurring. *See Crain*, 315 S.W.3d at 53 (holding that "level of criminal activity in an area . . . [is not] suspicious in and of [itself]"); *see also Gurrola v. State*, 877 S.W.2d 300, 303 (Tex. Crim. App. 1994) (stating that the high-crime reputation of the area where the detainees were seen is not enough by itself to support an investigative stop); *cf. Williams v. State*, No. 01-93-00874, 1994 WL 400292, at *2 (Tex. App.—Houston [1st Dist.] Aug. 4, 1994, pet. ref'd, untimely filed) (not designated for publication) (holding that officer had

10

reasonable suspicion to detain appellant when driver of stolen car had fled scene of accident, bystanders pointed out the direction in which he had fled, and officer found appellant hiding under some bushes).

Based on our review of the case law and the totality of the circumstances, we conclude that the specific, articulable facts here present an insufficient basis for reasonable suspicion, and we sustain Snyder's first issue. *See St. George*, 237 S.W.3d at 726; *see also Domingo*, 82 S.W.3d at 618.[7]

### III. Sufficiency

In his second issue, Snyder argues that the evidence is insufficient to support the jury's verdict because the State failed to prove that there had been a lawful detention. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

---

[7]As in *Domingo*, before he was taken to jail for identification, Snyder had provided the same name, date of birth, and social security number each time Sergeant Leach asked him for his identification. *See* 82 S.W.3d at 619. Sergeant Leach testified that he thought Snyder was being dishonest about who he was and took him to jail for identification because he could not locate "Jim James Morgan" in the system, Jim and James were similar names, and Jim is a nickname for James.

A person commits the offense of failure to identify if he intentionally gives a false or fictitious name, residence address, or date of birth to a peace officer who has lawfully arrested or detained him.  Tex. Penal Code Ann. § 38.02(b)(1), (2) (West 2011).  Based on our resolution above, there was no reasonable suspicion to detain Snyder.  Therefore, his detention was unlawful, making the evidence insufficient to support the jury's verdict.  We sustain Snyder's second issue.

## IV.  Conclusion

Having sustained both of Snyder's issues, we reverse the trial court's judgment and enter a judgment of acquittal.  *See* Tex. R. App. P. 43.2(c).


/s/ Bob McCoy

BOB MCCOY
JUSTICE

PANEL:  LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 2, 2014