**Lance Mitchell LUCKENBACH, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 14-15-01048-CR**

Court of Appeals of Texas, Houston (14th Dist.).

Opinions Filed June 6, 2017

Rehearing Overruled July 20, 2017

Mike DeGeurin, Houston, TX, for Appellant.

Dan McCrory, Houston, TX, for State.

Panel consists of Chief Justice Frost and Justices Christopher and Brown.

## OPINION

Kem Thompson Frost, Chief Justice

Appellant Lance Mitchell Luckenbach challenges his conviction for driving while intoxicated, arguing in a single issue that the trial court should have granted his motion to suppress evidence of blood-alcohol-concentration tests conducted under a search warrant because the warrant's supporting affidavit did not show probable cause. Concluding the affidavit supports a finding of probable cause and the trial court did not err in denying appellant's motion to suppress, we affirm.

### I. BACKGROUND

After appellant was charged with driving while intoxicated ("DWI"), he filed a written motion to suppress blood-test evidence on the grounds that the affidavit in support of the search warrant failed to provide probable cause. Appellant attached the affidavit to his motion. The affiant, Officer David Ciers of the Houston Police Department, described his background and experience in the field of alcohol detection and then stated:

> I have reason to believe that on or about November 1, 2013 at 12:08 AM, in Harris County, Texas, the Defendant did then and there unlawfully operate a motor vehicle in a public place while intoxicated. My belief is based on the following:

> In this case, On or about November 1, 2013 at approximately 12:08 AM Officer K.V. Mitchell, a peace officer employed by the Houston Police Department, observed a 2009 Black Audi A5, a motor vehicle, license plate BNK-8360, in the 1700 block of Gray Street a public place in Harris County, Texas, driving the wrong way eastbound on a oneway street that goes westbound only. Officer Mitchell a reliable and credible witness then initiated a traffic stop by "activating his emegency [sic] equipment in his marked police car and the defendant's vehicle stopped in the 2100 block of Hamilton a public roadway in Houston, Harris County, Tx. Officer Mitchell made contact with the defendant and he observed him with a strong odor of an alcoholic beverage on and about his breath. Officer Mitchell then asked for a DWI Task force unit and I came by the scene to assist with the investigation.

> I came into contact with Defendant and noticed glassey [sic] eyes and a strong odor of an alcohol beverage on and about the Defendant's breath and person.

> I asked Defendant to perform some field sobriety tests to determine the Defendant's level of intoxication, including the HGN, OLS, and WAT. I use these tests

frequently and find them to be accurate and reliable indicators of intoxication or lack thereof and have arrested many people based on their poor performances on these tests (as well as having released many people based upon their satisfactory performance on these tests). The defendant refused to do all field sobriety test[s] at the scene.

At the scene, I offered the Defendant an opportunity to provide a sample of the Defendant's breath and Defendant declined to provide a sample. This is a violation of the Texas Implied Consent law and is also an indication to me that Defendant is attempting to hide evidence of the Defendant's level of intoxication.

Based on the totality of the circumstances including Defendant's actions and performance prior to the testing, I formed the opinion that Defendant was intoxicated due to the introduction of alcohol into the Defendant's system and had lost the normal use of the Defendant's mental and physical faculties. I am aware that blood can be drawn and used to scientifically determine a person's level of intoxication and I have therefore done so on many occasions. I am aware through my training and my experience that blood can be drawn through minimally invasive and medically accepted techniques. It is my belief that based upon all my observations, that a chemical sample will provide evidence of this Defendant's state of intoxication as well as evidence of the type of substance that has been consumed.

In appellant's motion to suppress, he asserted that the affiant made conclusory statements. Specifically, appellant pointed to the following two statements and argued they were conclusory:

Based on the totality of the circumstances including Defendant's actions and performance prior to the testing, I formed the opinion that Defendant was intoxicated due to the introduction of alcohol into the Defendant's system and had lost the normal use of the Defendant's mental and physical faculties.

It is my belief that based upon all my observations, that a chemical sample will provide evidence of this defendant's state of intoxication as well as evidence of the type of substance that has been consumed.

Appellant argued that the two conclusions did not support each other and that the four corners of the affidavit did not support the affiant-officer's initial conclusion that appellant was intoxicated based on alcohol consumption. Appellant further argued that the affiant-officer did not state that his observations of appellant were "accurate and reliable indicators of intoxication." According to appellant, the magistrate could not infer that driving the wrong way on a one-way street, smelling of alcohol, and having glassy eyes were accurate and reliable indicators of intoxication.

The trial court conducted a hearing on appellant's motion to suppress at which no parties introduced any evidence. At the end of the hearing, the trial court made the following findings on the record:

The Court finds that based on the affidavit for the search warrant, that the defendant was driving the wrong way on a one-way street in Harris County, Texas; that a strong odor of alcohol was observed on the defendant's breath by both Officer Mitchell and Officer Sears;[1]

---

1. In transcribing the trial court's findings, the court reporter spelled Officer Ciers's name "Sears."

that Officer Sears observed the defendant to have glassy eyes; that the defendant refused to perform field sobriety test[s] at the scene; and that the defendant refused to provide a breath sample when asked to do so.

And the conclusions of law will be that the affidavit did contain sufficient probable cause to believe that the defendant had committed the offense of driving while intoxicated.

Following the trial court's ruling, appellant pleaded "guilty" to the DWI offense in exchange for the State's recommendation of forty-five days' confinement in the Harris County Jail. The trial court accepted the "guilty" plea, sentenced appellant under the plea agreement, and gave appellant permission to appeal the trial court's denial of the motion to suppress.

## II. APPLICABLE LAW

We normally review a trial court's motion-to-suppress ruling under a bifurcated standard of review, under which we give almost total deference to the trial court's findings as to historical facts and review de novo the trial court's application of the law. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). But, when the trial court determines probable cause to support the issuance of a search warrant, there are no credibility calls; rather, the trial court rules based on what falls within the four corners of the affidavit. *Id.* When reviewing a magistrate's decision to issue a warrant, appellate courts as well as trial courts apply a highly deferential standard of review because of the constitutional preference for searches conducted under a warrant over warrantless searches. *Id.* As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable-cause determination. *Id.* We are not to view the affidavit through

hypertechnical lenses; instead, we must analyze the affidavit with common sense, recognizing that the magistrate may draw reasonable inferences from the facts and circumstances contained in the affidavit's four corners. *Id.* When in doubt, we defer to all reasonable inferences that the magistrate could have made. *Id.* at 272.

Under Code of Criminal Procedure article 18.02(a)(10), a search warrant may be issued to search for and seize property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense. Tex. Code Crim. Proc. Ann. art. 18.02(a)(10) (West, Westlaw through 2015 R.S.). A search warrant may not be issued under article 18.02(a)(10) unless the sworn affidavit required by article 18.01(b) sets forth sufficient facts to establish probable cause (1) that a specific offense has been committed, (2) that the specifically described property or items to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched. Tex. Code Crim. Proc. Ann. art. 18.01(c) (West, Westlaw through 2015 R.S.).

A magistrate shall not issue a search warrant without first finding probable cause that a particular item will be found in a particular location. *McLain*, 337 S.W.3d at 272. Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location. *Id.* It is a flexible and non-demanding standard. *Id.* The facts stated in a search-warrant affidavit must be related so closely to the time of the

warrant's issuance that a finding of probable cause is justified. *Id.*

With this framework in mind, we turn to appellant's issue: whether the trial court erred in determining that the affidavit contained sufficient facts to establish probable cause to support the issuance of the search warrant.

### III. ANALYSIS

Appellant asserts that Officer Ciers's affidavit did not provide a sufficient basis to support the magistrate's probable-cause finding. According to appellant, the affidavit provides too few facts to substantiate a reasonable belief that appellant lacked the normal use of his faculties. Appellant argues, "Affiant's observations are consistent with intoxication, but insufficient to establish a substantial basis for a probable cause finding."

A person commits the offense of DWI if the person is intoxicated while operating a motor vehicle in a public place. Tex. Penal Code Ann. § 49.04 (West, Westlaw through 2015 R.S.). According to the affidavit, shortly after midnight on November 1, 2013, Officer Mitchell saw a motor vehicle in a public place going the wrong way on a one-way part of Gray Street. Officer Mitchell initiated a traffic stop. The affiant recites that, after appellant's vehicle stopped, Officer Mitchell made contact with appellant and detected a strong odor of an alcoholic beverage on appellant's breath. Officer Mitchell asked for a DWI task force unit, and Officer Ciers arrived at the scene to assist with the investigation.

In the affidavit, Officer Ciers states that he came into contact with appellant and noticed appellant's "glassey eyes" and a strong odor of alcohol "on and about [appellant's] breath and person." Officer Ciers asked appellant to perform some field sobriety tests, but appellant refused to do so.

Officer Ciers then gave appellant the opportunity to provide a sample of appellant's breath, and appellant declined.

■ The magistrate reasonably could have inferred from the statements in the affidavit that (1) Officer Mitchell told Officer Ciers what he observed that prompted him to call for a DWI task force unit—the police unit dedicated to investigating suspected intoxicated drivers; and (2) appellant was driving the vehicle that was going the wrong way down a one-way part of Gray Street. *See Hogan v. State,* 329 S.W.3d 90, 95–96 (Tex. App.—Fort Worth 2010, no pet.) (affidavit was sufficient to connect defendant to DWI offense even though the affidavit did not specifically state that the defendant was the person who was driving the vehicle).

■ Even if the magistrate could not reasonably have inferred from the statements in the affidavit that appellant was driving the vehicle, we could not reverse the trial court's judgment on this basis because appellant failed to preserve error on this complaint. Appellant did not voice this complaint in his motion to suppress. He asserted that Officer Ciers mentioned in the affidavit that appellant "was observed traveling the wrong way on a one-way street" and that Officer Ciers did not state "for how long [appellant] was traveling in that direction." Appellant did not complain that the affidavit fails to show probable cause because the magistrate could not reasonably have inferred from the affidavit statements that appellant was driving the vehicle, and so appellant did not preserve error in the trial court. *See Swain v. State,* 181 S.W.3d 359, 365 (Tex. Crim. App. 2005); *Rothstein v. State,* 267 S.W.3d 366, 373–74 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). In his appellate briefing, appellant states that Officer Ciers "had presumably reliable informa-

tion that Luckenbach had driven the wrong way down a one-way street." Appellant does not assert on appeal that the magistrate could not have made the appellant-was-driving inference. Though we have discretion to address unassigned error, we may not reverse a trial court's judgment based on an error of which appellant did not complain in the trial court, unless an exception to the preservation-of-error requirement applies. *See Sanchez v. State*, 209 S.W.3d 117, 120–21 (Tex. Crim. App. 2006); *Pena v. State*, 285 S.W.3d 459, 462–64 (Tex. Crim. App. 2009). Appellant did not assert in the trial court that the magistrate could not have made the appellant-was-driving inference, and no exception to the preservation-of-error requirement applies; so, we could not reverse the trial court's judgment based on this complaint. *See Sanchez*, 209 S.W.3d at 120–21; *Pena*, 285 S.W.3d at 462–64.

■ The Penal Code defines "intoxicated" in pertinent part as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body." Tex. Penal Code Ann. § 49.01(2)(A) (West, Westlaw through 2015 R.S.). Appellant argues that the affidavit does not substantiate a reasonable belief that he had lost the normal use of his faculties. The statements in the affidavit and reasonable inferences therefrom established the following pertinent facts:

- appellant was driving the wrong way on a one-way street;
- appellant had a strong odor of alcohol on his breath;
- appellant's eyes were glassy;
- appellant refused to perform the field sobriety tests at the scene when the officer requested he do so;
- though Officer Ciers gave appellant the opportunity to provide a sample of appellant's breath, appellant declined to do so.

Analyzing the affidavit in a commonsensical and realistic manner and recognizing that the magistrate may draw reasonable inferences from the facts and circumstances contained in the affidavit's four corners, we conclude that the magistrate had a substantial basis for concluding that, under the totality of the circumstances, there was a fair probability that evidence appellant committed a DWI offense would be found in appellant's blood. *See, e.g., Hogan v. State*, 329 S.W.3d at 96 (concluding that the following statements in the affidavit alone were sufficient to show probable cause that appellant committed DWI: appellant recklessly drove a vehicle, appellant refused to provide a breath specimen, and appellant had a "strong odor" of alcohol, "bloodshot, watery[,] and heavy eyes," a swayed and unsteady balance, and a staggered walk); *Foley v. State*, 327 S.W.3d 907, 912 (Tex. App.—Corpus Christi 2010, no pet.) (concluding that the following statements in the affidavit alone were sufficient to establish probable cause: appellant smelled strongly of alcohol, refused to provide breath or blood sample, appellant had red and glassy eyes, slurred speech, poor balance, and was geographically disoriented).

■ Appellant argues that the individual factors listed in the affidavit do not establish probable cause that appellant had lost the normal use of his faculties. In arguing that the smell of alcohol does not establish whether a person has lost the normal use of his faculties, appellant cites two cases in which the standard of review differs from the standard we are to apply in this case. Appellant cites *State v. Mosely*, 348 S.W.3d 435, 442 (Tex. App.—Austin 2011, pet. ref'd), in which the Third Court of Appeals determined that a defendant smelling of alcohol, slurring his speech, admitting to drinking, and causing an acci-

dent did not justify a warrantless arrest. Appellant also cites *Domingo v. State*, 82 S.W.3d 617, 622 (Tex. App.—Amarillo 2002, no pet.), in which the Seventh Court of Appeals held that an officer lacked reasonable suspicion to detain the defendant based only on a strong odor of alcohol emanating from the defendant. The *Mosely* and *Domingo* courts decided these cases under a different standard of review, and neither involved reviewing a magistrate's decision to issue a search warrant, in which appellate courts as well as trial courts apply a highly deferential standard of review because of the constitutional preference for warrant-supported searches over warrantless searches. *See McLain*, 337 S.W.3d at 271. In addition, these two cases involve significantly different fact patterns from the one presented in today's case. *See Mosely*, 348 S.W.3d at 441; *Domingo*, 82 S.W.3d at 621–22.

▮▮▮▮ In challenging the affiant's reliance on appellant's glassy eyes, appellant cites what he says is a "study commissioned by the NHTSA [National Highway Transportation and Safety Administration]" (the "Study") as well as "The Visual Detection of DWI Motorists," a document allegedly created by the National Highway Transportation and Safety Administration (the "Detection Guide"). Appellant asserts that the National Highway Transportation and Safety Administration has specifically excluded observations regarding a suspect's eyes from its ten post-stop cues because its researchers found that such observations were too subjective and were caused by too many other factors. Appel-

lant did not cite the Study or the Detection Guide in the trial court, nor did he present the Study or the Detection Guide to the trial court. Our appellate record does not contain the Study or the Detection Guide.[2] To the extent appellant asserts that the trial court should have suppressed the blood-test evidence because of something in the Study or the Detection Guide, appellant failed to preserve error on this point.[3] *See Penton v. State*, 489 S.W.3d 578, 579–80 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Vafaiyan v. State*, 279 S.W.3d 374, 383 (Tex. App.—Fort Worth 2008, pet. ref'd).

▮▮▮▮ Appellant asserts that the affidavit does not contain any statement that appellant was swaying, staggering, slurring his speech, was involved in an accident or was driving erratically, had difficulty with motor-vehicle controls, fumbled with his driver's license, repeated questions or comments, was slow to respond to officer questions, provided incorrect information, changed his answers, or appeared confused, disoriented, or mentally impaired. Though the affidavit does not mention this conduct, the absence of such statements does not mean the magistrate did not have a substantial basis for concluding that, under the totality of the circumstances, there was a fair probability that evidence that appellant committed a DWI offense would be found in appellant's blood. *See Rodriguez v. State*, 232 S.W.3d 55, 62 (Tex. Crim. App. 2007). Our inquiry focuses on whether the affidavit contains sufficient facts, coupled with reasonable

---

**2.** No party has asked this court to take judicial notice of the Study or the Detection Guide, and we decline to do so. *See Plouff v. State*, 192 S.W.3d 213, 216 n.1 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

**3.** At oral argument, appellant stated he is not arguing that a person's "glassy eyes" cannot be relied upon at all to establish a fair proba-

bility that evidence the person committed a DWI offense would be found in the person's blood. In any event, appellant did not voice this complaint in the trial court, and thus appellant failed to preserve error on this point. *See Penton*, 489 S.W.3d at 579–80; *Vafaiyan*, 279 S.W.3d at 383.

inferences from those facts, to establish a "fair probability" that evidence of a particular crime likely will be found at a given location. *See id.* The issue is not whether other facts could have, or even should have, been included in the affidavit. *Id.* Instead of focusing on what is not in the affidavit, we concentrate on the combined logical force of the facts that are in it. *Id.*

Appellant also asserts that the affidavit fails because Officer Ciers does not explain the significance of a person having glassy eyes or a strong odor of alcohol on the person's breath, nor does Officer Ciers discuss his experience with people who meet this description. The facts included in Officer Ciers's affidavit coupled with reasonable inferences from those facts, would lead an untrained, person-on-the-street to see a "fair probability" that evidence appellant committed a DWI offense would be found in appellant's blood; therefore, for the affidavit to establish probable cause, Officer Ciers did not have to explain the significance of glassy eyes, or a strong odor of alcohol on the breath, or his experience in this regard. *See Hogan*, 329 S.W.3d at 96.

Appellant points to aspects of the affidavit possibly indicating that Officer Ciers used a form to create the affidavit. The affidavit contains statements regarding the accuracy and reliability of field sobriety tests, followed by a statement that appellant refused to perform all field sobriety tests at the scene. Officer Ciers states that he based his opinion that appellant was intoxicated on the totality of the circumstances, including appellant's "actions and performance prior to the testing," but there was no testing because appellant refused to perform field sobriety tests or provide a breath sample. The statements about the accuracy and reliability of field sobriety tests and appellant's conduct "prior to the testing" do not prevent the other

statements in the affidavit from establishing a fair probability that evidence appellant committed a DWI offense would be found in appellant's blood. *See Hogan*, 329 S.W.3d at 96; *Foley v. State*, 327 S.W.3d at 912.

Appellant cites *Farhat v. State* in support of his contention that Officer Ciers's affidavit does not contain sufficient facts to establish probable cause. 337 S.W.3d 302, 306–08 (Tex. App.—Fort Worth 2011, pet. ref'd) (reversing trial court's determination of probable cause based on insufficient facts in affidavit). But, the affidavits are not comparable. The *Farhat* affidavit contains far fewer facts describing the officer's personal observations than the affidavit in today's case. In *Farhat*, the officer stated in his affidavit that (1) Farhat was driving ten miles per hour below the speed limit at around 12:50 a.m.; (2) Farhat was weaving from side to side; (3) Farhat continued in the left lane for about a half mile; (4) Farhat turned on his right-turn signal but turned left into a parking lot; (5) the officer, after stopping Farhat, saw two pill bottles in the center console of Farhat's vehicle; (6) Farhat refused field sobriety testing; and (7) the officer believed Farhat had committed the offense of DWI. *Id.* at 306–07. The *Farhat* court noted that the affidavit failed to contain any personal observations of the affiant. *Id.* at 307. Appellant argues that, as in *Farhat*, the only way to support a finding that there was a substantial basis to support a probable-cause determination that appellant had lost the normal use of his faculties would be to infer additional facts into the affidavit. We disagree.

The magistrate reasonably could have inferred from the statements in Officer Ciers's affidavit that appellant was driving the wrong way down a one-way street, had glassy eyes, gave off a strong odor of alcohol on his breath, refused to perform

the field sobriety tests at the scene when requested to do so, and declined an opportunity to provide a breath sample. Unlike the *Farhat* affidavit, which contained no specifically described "personal observations" to support the officer's statement that he believed Farhat was driving while intoxicated, Officer Ciers's affidavit included personal observations of appellant that support the reasonable belief that appellant was driving while intoxicated. These key differences distinguish *Farhat* from today's case.

The trial court did not err in determining that the magistrate had a substantial basis for finding, under the totality of the circumstances, a fair probability that evidence appellant committed a DWI offense would be discovered in appellant's blood and that probable cause supported the issuance of the search warrant. *See Hogan*, 329 S.W.3d at 96; *Foley v. State*, 327 S.W.3d at 912. We thus overrule appellant's sole issue on appeal.

### IV. CONCLUSION

Under the applicable legal standard, we conclude the trial court did not err in denying appellant's motion to suppress. Therefore, we affirm the trial court's judgment.

(Brown, J., dissenting)

Marc W. Brown, Justice, dissenting.

The majority holds that the affidavit establishes probable cause for a search warrant to draw blood from appellant. I disagree with this conclusion. I would reverse the trial court's ruling. Accordingly, I dissent.

The affidavit at issue fails even when interpreted in a non-hyper-technical, common-sense fashion and drawing reasonable inferences from the facts contained within the affidavit's four corners. The affidavit reads:

I have reason to believe that on or about November 1, 2013 at 12:08 AM, in Harris County, Texas, the Defendant did then and there unlawfully operate a motor vehicle in a public place while intoxicated. My belief is based on the following:

In this case, [o]n or about November 1, 2013 at approximately 12:08 AM Officer K.V. Mitchell, a peace officer employed by the Houston Police Department, observed a 2009 Black Audi A5, a motor vehicle, license plate BNK-[####], in the 1700 block of Gray Street a public place in Harris County, Texas, driving the wrong way eastbound on a oneway street that goes westbound only. Officer Mitchell a reliable and credible witness then initiated a traffic stop by "activating his emegency [sic] equipment" in his marked police car and the defendant's vehicle stopped in the 2100 block of Hamilton a public roadway in Houston, Harris County, Tx. Officer Mitchell made contact with the defendant and he observed him with a strong odor of an alcoholic beverage on and about his breath. Officer Mitchell then asked for a DWI Task force unit and I came by the scene to assist with the investigation.

I came into contact with Defendant and noticed glassey [sic] eyes and a strong odor of an alcohol beverage on and about the Defendant's breath and person.

I asked Defendant to perform some field sobriety tests to determine the Defendant's level of intoxication, including the HGN, OLS, and WAT. I use these tests frequently and find them to be accurate and reliable indicators of intoxication or lack thereof and have arrested many people based on their poor performances on these tests (as well as having released many people based upon their

satisfactory performance on these tests). The defendant refused to do all field sobriety test [sic] at the scene.

At the scene, I offered the Defendant an opportunity to provide a sample of the Defendant's breath and Defendant declined to provide a sample. This is a violation of the Texas Implied Consent law and is also an indication to me that Defendant is attempting to hide evidence of the Defendant's level of intoxication.

Based on the totality of the circumstances including Defendant's actions and performance prior to the testing, I formed the opinion that Defendant was intoxicated due to the introduction of alcohol into the Defendant's system and had lost the normal use of the Defendant's mental and physical faculties. I am aware that blood can be drawn and used to scientifically determine a person's level of intoxication and I have therefore done so on many occasions. I am aware through my training and my experience that blood can be drawn through minimally invasive and medically accepted techniques. It is my belief that based upon all my observations, that a chemical sample will provide evidence of this Defendant's state of intoxication as well as evidence of the type of substance that has been consumed.

It is my belief that based upon all my observations, that a chemical sample will provide evidence of this defendant's state of intoxication as well as evidence of the type of substance that has been consumed.

We are tasked with determining whether the affidavit for the search warrant sets forth probable cause. We normally review a trial court's decision on a motion to suppress under a bifurcated standard, giving almost total deference to the trial court's findings of historical facts but reviewing *de novo* its application of the law to the facts. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). However, when the trial court is determining probable cause to support issuance of a search warrant, there are no credibility determinations; rather, the trial court is constrained to the four corners of the affidavit. *Id.* Accordingly, when reviewing the magistrate's decision to issue a warrant, we apply a highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant. *Id.* As long as the magistrate had a substantial basis for concluding probable cause existed, we will uphold the magistrate's decision. *Id.* We may not analyze the affidavit in a "hyper-technical manner" and instead should interpret it in "a commonsensical and realistic manner," deferring to all reasonable inferences that the magistrate could have made. *Id.* (quoting *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007)). "Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location." *Id.* at 272. This analytical framework is straightforward. It is not a blank check.

A search warrant is generally required to draw blood from a suspect. *Missouri v. McNeely*, 569 U.S. 141, 133 S.Ct. 1552, 1558, 185 L.Ed.2d 696 (2013). Under article 18.02(a)(10) of the Texas Code of Criminal Procedure, a search warrant may be issued to search for and seize property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense. Tex. Code Crim. Proc. Ann. art. 18.02(a)(10) (West 2015). A search warrant may not be issued under article 18.02(a)(10) unless the sworn affidavit required by article 18.01(b) sets forth suffi-

cient facts to establish probable cause (1) that a specific offense has been committed, (2) that the specifically described property or items to be searched for or seized constitutes evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched. *Id.* art. 18.01(c) (West 2015). A warrant issued under this provision is often called an "evidentiary warrant." *Porath v. State*, 148 S.W.3d 402, 408 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The forgoing provision applies to search warrants to draw blood from a suspect. *Clay v. State*, 391 S.W.3d 94, 97 (Tex. Crim. App. 2013).

Essential in an affidavit for an evidentiary search warrant are facts to establish that a particular person committed an offense. *Carmen v. State*, 358 S.W.3d 285, 297 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The offense for which evidence was sought in this case was Driving While Intoxicated. A person commits this offense if the person is intoxicated while operating a motor vehicle in a public place. Tex. Penal Code Ann. § 49.04(a) (West 2015). Simply put, the affidavit must set forth probable cause that appellant operated a motor vehicle in a public place while intoxicated. Operate is not defined in the Texas Penal Code, and is therefore given its common meaning. *See Denton v. State*, 911 S.W.2d 388, 389 (Tex. Crim. App. 1995) (approving of lower court's reliance on the common meaning of the statutorily undefined term "operate" in assessing the sufficiency of the evidence).

In the second paragraph of the probable cause affidavit, Ciers states what Officer K. V. Mitchell observed appellant do. Nowhere in the affidavit does Ciers state that *Mitchell* observed appellant operating a vehicle. Operating a vehicle is an element of the offense for which Ciers sought to obtain evidence. The affidavit is devoid of that element. In fact, there is *no direct mention* in the affidavit that appellant was in the vehicle, much less operating it. Yet, the majority holds that the magistrate must have inferred that Mitchell observed appellant driving a car. This is more than an inference. It is speculation.

Next, the probable cause affidavit details what Ciers personally observed. Nowhere in the affidavit does Ciers state that he came to know that appellant was operating a vehicle on the night in question. Further, the affidavit in no way details how Ciers came to know what Mitchell observed. No doubt the majority believes the magistrate inferred that Mitchell told Ciers what Mitchell observed in addition to inferring appellant was in the vehicle and operating it. While it may be reasonable to infer that Mitchell told Ciers what Mitchell observed, again, since there is no mention of appellant operating a vehicle, it is not reasonable, based on this affidavit, to infer that Mitchell told Ciers that appellant was operating a vehicle.

The majority cites *Hogan v. State*, 329 S.W.3d 90 (Tex. App.—Fort Worth 2010, no pet.), to support the inference that appellant was driving the vehicle. *Hogan* is distinguishable. The affidavit in *Hogan* indicates that the affiant was present when Hogan was stopped. Further, the affidavit details what the affiant observed when the stop took place. The affidavit in this case does not indicate that Ciers ever saw the car being driven by anyone. Nor does the affidavit in this case state that anyone told Ciers that appellant drove the vehicle. The court in *Hogan* remarked that the affidavit could have been clearer. *Id.* at 95. That would be an understatement in this case.

The majority alternatively holds the complaint that appellant was not driving was not preserved. The cases cited for this

proposition do not deal with written motions to suppress evidence from a search based on a defective search warrant affidavit and are distinguishable. *See Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) (holding as unpreserved the general complaint that statements obtained in violation of right to counsel should have been suppressed); *Rothstein v. State*, 267 S.W.3d 366, 373 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding as unpreserved the "generic" complaint that evidence obtained pursuant to illegal search should have been suppressed). Additionally, the Motion to Suppress states "the affidavit failed to provide the magistrate with all requisite probable cause to believe that Mr. Luckenbach had committed the offense of DWI." Appellant specifically pointed out that Ciers's affidavit was lacking "all requisite probable cause." Certainly, a vital aspect of probable cause for the commission of the offense of DWI is whether the particular individual to be subjected to the blood draw search had been operating the vehicle. Therefore, even applying the cases cited by the majority, I would find that appellant preserved the issue.

Applying the deferential standard, as we are bound to do, this affidavit fails. Article 18.02(a) requires evidence that a particular person committed an offense. That requirement has not been met. Failing to comply with the statutory requirements of article 18.02(a) is not a hyper-technical error. Reading this affidavit in a commonsensical manner reveals a total absence of an essential element of an offense for which evidence is sought. The speculative inferences the majority makes in this matter ignore statutory requirements and take our jurisprudence further away from the

requirement of probable cause so clearly established in the Fourth Amendment of the United States Constitution and Article I, Section 9, of the Texas Constitution. As reviewing courts, we must ask ourselves at what point do these "reasonable inferences" become a rubber stamp and abolish the necessity of probable cause entirely? This is especially true if we infer compliance with statutory requirements. The ever-growing catalog of "reasonable inferences" found in our jurisprudence continues to diminish the requirement of probable cause. Indeed, perhaps someday we will find that a magistrate could infer everything needed to establish probable cause in search warrant affidavits. If we continue to dilute the requirements of the Fourth Amendment, then we risk what would essentially be a return to the use of writs of assistance.[1] The Fourth Amendment requires more than *possible* cause, which is what the affidavit in this case has at best.

I respectfully dissent.

---

1. Writs of assistance allowed customs officers in the early colonies to rummage through homes and warehouses, without any showing of probable cause linked to a particular place

or item sought. *See generally United States v. Wurie*, 728 F.3d 1, 3 (1st Cir. 2013), *aff'd sub nom., Riley v. California*, —— U.S. ——, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014).