**Opinion issued March 25, 2025**



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-23-00779-CR

_____

**QUENTIN EARL EDWARDS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 15**
**Harris County, Texas**
**Trial Court Case No. 2447018**

---

### MEMORANDUM OPINION

The State charged appellant Quentin Earl Edwards with the Class B misdemeanor offense of driving while intoxicated ("DWI").[1] Edwards moved to

---

[1]    *See* TEX. PENAL CODE § 49.04(a)–(b).

suppress evidence of his blood draw, arguing that the police officer's affidavit supporting the search warrant application did not establish probable cause. After the trial court denied Edwards' motion to suppress, he pleaded guilty to the charged offense. The trial court found Edwards guilty of DWI, assessed his punishment at 180 days' confinement, suspended the sentence, placed him on community supervision for 12 months, and ordered him to pay fines and court costs.

In one issue on appeal, Edwards argues that the trial court erred in denying his motion to suppress the blood evidence. He contends that the affidavit supporting the search warrant was insufficient to establish probable cause because although the affidavit identified Edwards as "the Defendant," it did not identify him as "the driver" of the vehicle. We affirm.

**Background**

On February 25, 2023, Harris County Constable's Office Deputy J. Boughter arrested Edwards for the offense of DWI and applied for a search warrant to obtain a blood sample from Edwards. A magistrate authorized issuance of the search warrant. The State later charged Edwards by information with the misdemeanor offense of DWI and alleged that Edwards had a prior DWI conviction.

Edwards moved to suppress the blood evidence and any test results of his blood. Edwards argued that the affidavit in support of the search warrant did not establish probable cause because the affidavit did not identify Edwards as the driver

or operator of the motor vehicle. The affidavit described the encounter between Deputy Boughter and "the driver," and it detailed actions taken by "the driver." Although the affidavit identified Edwards as "the Defendant," it did not identify Edwards as "the driver." Edwards argued that based on Boughter's language in the affidavit, "[o]ne would have to *assume* that Defendant was, in fact, the driver of the vehicle," but such an assumption is not permissible. He further argued that because the affidavit did not identify him as the operator of the vehicle, the magistrate "had no evidence of a critical element of the offense of driving while intoxicated before him" and impermissibly "read into the affidavit material information that was not contained therein."

The trial court held a non-evidentiary hearing on Edwards' motion to suppress and heard argument from both Edwards and the State.[2] At the close of the hearing, the court announced that it would take the matter under advisement. One week later, the court orally denied Edwards' motion to suppress.

Edwards and the State then entered into a plea bargain agreement. The State agreed to abandon the enhancement allegation of the prior DWI offense and reduce the charge to "DWI first offender," and Edwards agreed to plead guilty to the

---

[2]     No witnesses testified at this hearing, and the trial court did not admit any exhibits. Although the search warrant affidavit was not admitted into evidence, the court stated that it had Edwards' motion "with accompanying exhibits"—the affidavit and the search warrant itself—and the State's response, and it was "going to review the information that has been provided by the parties."

reduced charge. For punishment, the State recommended 180 days' confinement in the Harris County Jail, probated for 12 months, with several conditions imposed.

The trial court accepted Edwards' guilty plea. In the judgment of conviction, the court assessed Edwards' punishment as the parties had agreed in the plea bargain: confinement for 180 days, with the sentence suspended, and a 12-month period of community supervision. This appeal followed.

While this case was on appeal, Edwards requested that this Court abate the appeal for the trial court to issue findings of fact and conclusions of law relating to its decision on Edwards' motion to suppress. We abated the appeal. The trial court then filed findings and conclusions that are now part of the appellate record.

**Sufficiency of Search Warrant Affidavit**

In his sole issue on appeal, Edwards argues that the trial court erred by denying his motion to suppress the blood evidence because the affidavit supporting the search warrant did not establish probable cause in this DWI case. Specifically, although the affidavit described Edwards as "the Defendant," it did not identify him as "the driver" of the vehicle. Edwards argues that the affidavit does not establish that he was driving or operating the vehicle, an essential element of a DWI offense.

**A.    Standard of Review and Governing Law**

Both the United States and Texas Constitutions protect people from unreasonable searches and seizures by generally requiring police officers to obtain

a warrant based on probable cause prior to conducting the search or seizure. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *see also* TEX. CODE CRIM. PROC. art. 18.01(b) ("No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance."). Probable causes exists when, under the totality of the circumstances, there is a fair probability that evidence of a crime will be found in a particular location. *State v. Baldwin*, 664 S.W.3d 122, 130 (Tex. Crim. App. 2022). This is a "flexible, non-demanding standard." *Id.* Probable cause "deals with probabilities"; although it requires "more than mere suspicion," it also requires "far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence." *State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023) (quotations omitted).

Ordinarily, we apply a bifurcated standard of review when reviewing a trial court's ruling on a motion to suppress, giving almost total deference to the trial court's determination of historical facts that are supported by the record and reviewing de novo the application of the law to the facts. *State v. Heath*, 696 S.W.3d 677, 689 (Tex. Crim. App. 2024). However, when the trial court determines whether probable cause supports the issuance of a search warrant, the court is constrained to the four corners of the affidavit and makes no credibility determinations. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). "The test is whether a

5

reasonable reading of the supporting affidavit provides a substantial basis for the magistrate's conclusion that probable cause existed." *Diaz v. State*, 632 S.W.3d 889, 892 (Tex. Crim. App. 2021). The affidavit must present "[s]ufficient information" to allow the magistrate to determine probable cause because the magistrate's action "cannot be a mere ratification of the bare conclusions of others." *Illinois v. Gates*, 462 U.S. 213, 239 (1983).

We apply a highly deferential standard when reviewing the magistrate's decision to issue a warrant due to the constitutional preference for police officers to conduct searches pursuant to a warrant. *McLain*, 337 S.W.3d at 271; *see Baldwin*, 664 S.W.3d at 130 ("Even in close cases, reviewing courts give great deference to a magistrate's probable cause determination to encourage police officers to use the warrant process."). We do not analyze search warrant affidavits in a "hyper-technical manner." *McLain*, 337 S.W.3d at 271. Rather, we interpret the affidavit in a "commonsensical and realistic manner," recognizing that the magistrate may draw reasonable inferences. *Id.* (quotations omitted).

"When in doubt, reviewing courts should defer to all reasonable inferences a magistrate could have made." *Baldwin*, 664 S.W.3d at 130. We do not focus on other facts that could or should have been included in the affidavit; instead, we focus on "the combined logical force of facts that are in the affidavit." *State v. Duarte*, 389 S.W.3d 349, 354–55 (Tex. Crim. App. 2012); *see also State v. Jordan*, 342 S.W.3d

565, 570–71 (Tex. Crim. App. 2011) (stating that courts should not analyze statements in affidavit—such as introductory statement that officer believed DWI offense had been committed and following description of supporting facts—separately, but should instead consider "the totality of the circumstances contained within the four corners of the affidavit").

**B.      Whether the Search Warrant Affidavit Establishes Probable Cause to Obtain a Blood Sample**

**1.      The affidavit and the trial court's findings of fact and conclusions of law**

Deputy Boughter started his affidavit by swearing that he had "reason to believe and [does] believe that within the body of Quentin Earl Edwards hereafter Defendant, located in Harris County, Texas is evidence which is more particularly described as blood samples." Boughter also stated Edwards' birthdate and driver's license number.

In several paragraphs, Boughter set out his qualifications and familiarity with determining whether an individual is intoxicated. The affidavit then read as follows:

> I have reason to believe that on or about February 25, 2023 at 12:52 AM, in Harris County, Texas, the Defendant did then and there unlawfully operate a motor vehicle in a public place while intoxicated. My belief is based on the following:
>
> In this case, I observed [a] blue BMW four door motor vehicle stopped on the right shoulder of the 8900 block of the Katy Freeway Westbound HOV lanes / also known as I-10, a public roadway in Harris County, Texas. When I approached the vehicle, I observed that both of it's passenger's tires were flat. When the driver observed my marked police

vehicle, he drove away and was traveling approximately 20–30 mph on the HOV lanes, with his vehicle straddling the right shoulder stripe, i.e., driving on a shoulder. The driver traveled approximately a quarter mile before pulling to a stop on the right shoulder of the HOV lanes.

I consensually contacted the driver and observed that he had red bloodshot and slightly glassy eyes, and a moderate odor of alcoholic beverage upon his breath. The driver claimed that this rear passenger's tire wasn't flat, when it clearly was, and stated that he ruptured his front tire by striking one of the flexible white traffic delineators (the white plastic sticks in the roadway that look like 3-1/2 foot tall soda straws). I observed that the edge of the rim showed collision damage not consistent with striking a traffic delineators.

I asked the driver what he had to drink tonight and he only admitted to consuming one 12 ounce container of water.

I asked [the] driver to perform some field sobriety tests to determine the his [sic] level of intoxication, including the HORIZONTAL GAZE NYSTAGMUS ("HGN"); WALK AND TURN ("WAT"); ONE LEG STAND ("OLS"). I use these tests frequently and find them to be accurate and reliable indicators of intoxication or lack thereof and have arrested many people based on their poor performances on these tests (as well as having released many people based upon their satisfactory performance on these tests).

The results of the field sobriety tests:

The driver argued, moved his head, and talked throughout the Horizontal Gaze Nystagmus Test, making it more difficult to administer the test. Despite this, the driver showed lack of smooth pursuit and distinct and sustained nystagmus at maximum horizontal deviation in both eyes.

I then attempted to administer the Walk and Turn Test but the driver was uncooperative [so] I detained him and moved the scene to a nearby parking lot. I attempted to administer standardized field sobriety tests again but the driver remained argumentative and refused to perform any of the tests.

I detained the driver and transported him to the HCSO JPC Jail and brought him into a Houston Police Department DWI testing room where I again asked him to perform the HGN test and he refused. I then

gave the instructions for, and demonstrated, both the Walk and Turn test and the One Leg Stand test, and he refused to perform both of these tests as well. I explained to the driver multiple times that I use these tests frequently and find them to be accurate and reliable indicators of intoxication or lack thereof, and I have arrested many people based on their poor performances on these tests, as well as having released many people based upon their satisfactory performance on these tests. I explained that I could only interpret his refusal to perform these tests as an attempt to withhold evidence of his intoxication which would be demonstrated by his performance on the tests.

Therefore, I placed the Defenda[n]t under arrest. I read the Defendant the DIC 24 form, I offered Defendant an opportunity to provide a sample of the Defendant's breath, his blood, and his urine, and the Defendant declined to provide a sample. This is a violation of the Texas Implied Consent law and is also an indication to me that Defendant is attempting to hide evidence of the Defendant's level of intoxication.

Based on the totality of the circumstances including Defendant's actions and performance prior to the testing, I formed the opinion that Defendant was intoxicated due to the introduction of alcohol, into the Defendant's system and had lost the normal use of the Defendant's mental and physical faculties. I am aware that blood can be drawn and used to scientifically determine a person's level of intoxication and I have therefore done so on many occasions. I am aware through my training and my experience that blood can be drawn through minimally invasive and medically accepted techniques. It is my belief that based upon all my observations, that a chemical sample will provide evidence of this Defendant's state of intoxication as well as evidence of the type of substance that has been consumed.

I identified Defendant through the Defendant's Texas driver's license. I verified the accuracy of this identity information by comparing the photo on the card to the face of Defendant and determined them to be the same. I also verified through the use of the Department of Public Safety crime computer that this card belongs to Defendant.

The magistrate issued the requested search warrant.

After the trial court denied Edwards' motion to suppress the blood evidence and related testing results, the court filed findings of fact and conclusions of law. Several of the trial court's fact findings related to Deputy Boughter's initial contact with "the driver" on the Katy Freeway, as well as Boughter's contact with "the driver" at the jail, and Boughter's arrest of "the driver." The court also made the following fact findings:

4.    Deputy Boughter made [a] consensual encounter with the defendant, later identified as Quentin Edwards, hereinafter "the Defendant," and observed glassy, red-bloodshot eyes, and a moderate odor of alcoholic beverage on the Defendant's breath.

. . . .

14.   In Deputy Boughter's affidavit for search warrant, it provides an introduction with Deputy Boughter's name and agency, as well as the incident number, and the Defendant's name and identifiers including race, sex, date of birth, [and] Texas Driver's License number.

15.   The search warrant[] contains the time of the offense[,] that it occurred in Harris County, and states that the Defendant unlawfully operated a motor vehicle in a public place while intoxicated.

16.   Deputy Boughter goes on to lists the make/model of the vehicle that Defendant was driving, and the facts surrounding Deputy Boughter['s] initial contact with the Defendant (which was detailed above) and discusses the signs of intoxication that he observed.

17.   Further, Deputy Boughter's affidavit included the following, "I identified Defendant through the Defendant's Texas Driver's License. I verified the accuracy of this identity information by comparing the photo on the card to the face of Defendant and determined them to be the same." ["]I also verified through the

use of the Department of Public Safety crime computer that this card belongs to Defendant."

The trial court concluded that under the totality of the circumstances, "there are sufficient facts contained in the four corners of the search warrant affidavit by which the magistrate could have reasonably inferred that the 'defendant' was in fact the 'driver.'" The court further concluded that sufficient probable cause supported the issuance of the search warrant.

### 2. Whether the magistrate could have reasonably inferred "the Defendant" and "the driver" both referred to Edwards

In arguing that the affidavit did not sufficiently establish probable cause to justify a blood draw, Edwards points out that Deputy Boughter identified Edwards by name and referred to him as "the Defendant" in some portions of the affidavit. In other portions of the affidavit—including the portions that described Boughter's initial encounter with the vehicle, the administration of sobriety tests at the scene, and the administration of sobriety tests at the jail—Boughter referred to "the driver." Boughter never explicitly identified Edwards as "the driver." Edwards argues that as a result, the affidavit did not demonstrate probable cause that Edwards was operating the vehicle, an essential element of the offense of DWI.

The State argues that by reading the entire affidavit in context and with common sense, the magistrate could have reasonably inferred that both "the

11

Defendant" and "the driver" referred to the same person: Edwards. We agree with the State.

An affidavit supporting a search warrant must set forth sufficient facts to establish probable cause that:

(1)     a specific offense has been committed;

(2)     the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense; and

(3)     the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched.

TEX. CODE CRIM. PROC. art. 18.01(c); *see id.* art. 18.02(a)(10) (providing that search warrant may issue for property or items "constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense").

A person commits the offense of DWI if the person "is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE § 49.04(a); *see also* TEX. CODE CRIM. PROC. art. 18.01(j) (providing that magistrate may issue search warrant to collect blood specimen from person who is arrested for offense under Penal Code section 49.04 and refuses to submit to breath or blood alcohol test). "To determine if a person operated a motor vehicle, the totality of the circumstances must demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Espinosa*, 666 S.W.3d at 668

12

(quotations omitted); *see Kinnett v. State*, 623 S.W.3d 876, 898 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) ("Courts interpret 'operating' a motor vehicle very broadly.") (quotations omitted). Although driving involves operation of a vehicle, "operation does not necessarily involve driving." *Denton v. State*, 911 S.W.2d 388, 389 (Tex. Crim. App. 1995).

Deputy Boughter's affidavit began by stating that he had "reason to believe and [did] believe that within the body of Quentin Earl Edwards hereafter Defendant located in Harris County, Texas is evidence which is more particularly described as blood samples." Boughter then identified Edwards by name, birth date, and driver's license number. After reciting his qualifications and experience in conducting DWI investigations, Boughter stated:

> I have reason to believe that on or about February 25, 2023 at 12:52 AM, in Harris County, Texas, the Defendant did then and there unlawfully operate a motor vehicle in a public place while intoxicated. My belief is based on the following: . . .

The next seven paragraphs of the affidavit detailed Boughter's observations of "the driver" of a vehicle that he encountered on the shoulder of the Katy Freeway HOV lanes.

These observations included statements that although the vehicle had two flat tires on the passenger side, the driver drove away when he saw Boughter's vehicle. For nearly a quarter of a mile, the driver drove around 20–30 miles per hour, and he drove partially in the HOV lanes and on the shoulder before pulling over. Boughter

13

noticed that the driver "had red bloodshot and slightly glassy eyes, and a moderate odor of alcoholic beverage upon his breath," but he admitted only to drinking "one 12 ounce container of water." The driver falsely claimed that his vehicle did not have a flat rear passenger tire, and although he provided an explanation for the damage to his front passenger tire, Boughter did not find this explanation credible.

Boughter also described his attempts to conduct field sobriety tests with the driver. The driver was argumentative and uncooperative during the HGN test. This made it difficult for Boughter to conduct the test, but he could still observe some clues of intoxication. The driver refused to perform the remaining field sobriety tests at the scene or at the Harris County Jail, despite Boughter's warning that he would interpret refusal to perform the tests "as an attempt to withhold evidence of his intoxication which would be demonstrated by his performance on the tests."

Boughter then stated: "Therefore, I placed the Defenda[n]t under arrest." He offered the "Defendant"—Edwards—an opportunity to provide a breath, blood, or urine sample, but Edwards declined. As a "violation of the Texas Implied Consent law," this refusal also indicated to Boughter "that Defendant is attempting to hide evidence of the Defendant's level of intoxication." Boughter considered "the totality of the circumstances including Defendant's actions and performance prior to the testing" to form an opinion that "Defendant was intoxicated due to the introduction

of alcohol, into the Defendant's system and had lost the normal use of the Defendant's mental and physical faculties."

Reading the affidavit as a whole and in a common-sense and realistic manner, as we must when reviewing a magistrate's decision to issue a search warrant, we conclude that the magistrate reasonably could have inferred that both "the Defendant" and "the driver" referred to Edwards. *See McLain*, 337 S.W.3d at 271. The affidavit does not indicate that the vehicle Boughter encountered on the Katy Freeway had any occupants other than "the driver," and therefore the language of the affidavit itself does not raise the possibility that a person other than Edwards was operating the vehicle that Boughter stopped. *See Hogan v. State*, 329 S.W.3d 90, 95–96 (Tex. App.—Fort Worth 2010, no pet.) (concluding that magistrate could have reasonably inferred that defendant drove vehicle described in affidavit despite affidavit never specifically stating that defendant was person driving vehicle, in part because affidavit did not indicate that anyone other than defendant was at scene, and therefore affidavit did not create doubt that someone else could have driven vehicle).

Moreover, assuming that "the Defendant" and "the driver" are separate people would require the magistrate to believe that (1) Boughter personally witnessed an unnamed driver's driving behavior on the Katy Freeway, the driver's actions after being stopped, and the driver's performance—or lack thereof—on field sobriety tests both at the scene and at the Harris County Jail; (2) Boughter detailed all these

15

observations in his affidavit; but (3) Boughter nevertheless placed *Edwards* under arrest at the jail; (4) requested that Edwards provide a breath, blood, or urine sample; and (5) reached an opinion based on Edwards' "actions and performance prior to the testing"—none of which were detailed in the affidavit—that Edwards was intoxicated. This is not a reasonable reading of Boughter's affidavit. Instead, the more reasonable reading is that both "the Defendant" and "the driver" refer to Edwards, and all actions that Boughter described in the affidavit were Edwards' actions.

We hold that the trial court did not err by concluding that Boughter's affidavit contained sufficient facts from which the magistrate could have reasonably inferred that "the 'defendant' was in fact the 'driver.'" *See McLain*, 337 S.W.3d at 271; *see also Baldwin*, 664 S.W.3d at 130 ("When in doubt, reviewing courts should defer to all reasonable inferences a magistrate could have made.").

### 3. Whether the affidavit establishes probable cause that evidence of the offense of DWI would be found in Edwards' blood

Edwards also argues that even if he was "the driver," the affidavit does not contain sufficient information about "the driver's" actions to establish probable cause to justify a blood draw because "[t]here were no facts whatsoever illustrating or describing a loss of the normal use of mental and physical faculties for that individual." The State argues that Edwards failed to preserve this complaint for appellate review because his argument in the trial court focused on whether "the

16

Defendant" and "the driver" could be considered the same person, and he did not argue that even if "the Defendant" and "the driver" *were* the same person, the affidavit was still insufficient to establish probable cause.

We agree with the State that Edwards did not specifically argue—either in his written motion to suppress or in his oral arguments at the suppression hearing—that even if the actions of "the driver" as described in the affidavit could be imputed to Edwards, those actions did not establish probable cause justifying a blood draw. In fact, defense counsel expressed a belief to the contrary at the suppression hearing, stating:

> Now, if they had made an application for a search warrant of "driver," I'd say they probably got it. But that's not what we're here for. We're here for a search warrant for defendant. And if they are going to use a term of art, they better be consistent with it. Otherwise, they are being insufficient.

Edwards did not raise this additional complaint in the trial court, and therefore he has not preserved this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a); *Luckenbach v. State*, 523 S.W.3d 849, 855 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) ("Appellant did not complain that the affidavit fails to show probable cause because the magistrate could not reasonably have inferred from the affidavit statements that appellant was driving the vehicle, and so appellant did not preserve error in the trial court."); *see also Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002) ("And so it is that appellate courts may *uphold* a trial court's ruling on

17

any legal theory or basis applicable to the case, but usually may not *reverse* a trial court's ruling on any theory or basis that might have been applicable to the case, but was not raised.").

We overrule Edwards' sole issue.

## Conclusion

We affirm the judgment of the trial court.

David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Rivas-Molloy and Gunn.

Do not publish. TEX. R. APP. P. 47.2(b).